# EXHIBIT D

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |
| PCT Litigation Trust,[2] | |
| Plaintiff, | |
| v. | Adv. Proc. No. 25-      (JKS) |
| Yuchen "Justin" Sun, and Polo Digital Assets LTD, | |
| Defendants. | |

## DECLARATION OF JAMES P. BRENNAN

Under 28 U.S.C. § 1746, I, James P. Brennan, declare as follows under the penalty of perjury:

### I.       My Background

1.       I am a forensic accountant with over 20 years of experience conducting analyses and providing expert testimony in matters involving accounting fraud, Ponzi-schemes, financial crimes, and asset-tracing and recovery.  I have experience in forensic accounting and investigations in fiat and cryptocurrency.

---

[1]     The debtors in the Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number, are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528) (collectively, the "Debtors" or "Prime").  The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, Nevada 89135.

[2]     PCT Litigation Trust ("Plaintiff" or "PCT") was established for the primary purpose of pursuing litigation and distributing assets.  PCT Litigation Trust has been vested with claims and causes of actions previously held by the Debtors.

2.      I am a Senior Managing Director and Global Head of Fintech, Payments, and Crypto Compliance and Investigations at J.S. Held.  J.S. Held is a global professional service firm which provides technical, scientific, and financial advisory services.

3.      Prior to working at J.S. Held, I held positions at other investigation firms, including FTI Consulting, Alvarez & Marsal, and Kroll.  In these positions, I managed teams responsible for investigations involving money laundering, terrorist financing, Ponzi-schemes, asset theft, and other fraudulent activities, as well as asset-tracing and recovery.

4.      I hold both a B.S. and a M.S. in accounting from St. John's University.  I am a Certified Fraud Examiner and a Certified Bitcoin Professional.

5.      A copy of my resume is attached hereto as **Exhibit 1**.

6.      I specialize in accounting, forensic investigations, and disputes involving complex economic and financial transactions.  A significant amount of my practice and experience involves advising on crypto-related matters.

7.      I am routinely retained to perform analyses of information related to financial crimes, which include forensic investigations and flow-of-funds analyses related to crypto digital wallet addresses and fiat bank accounts.

8.      I am familiar with the forensic tools and methodologies used for conducting investigations related to both fiat and cryptocurrency in criminal, civil, bankruptcy, and regulatory matters.

9.      I also train domestic and international government entities concerning cryptocurrency and financial crimes.  These entities include, among others, the U.S. Department of Justice, U.S. Department of Homeland Security, and U.S. Bankruptcy Courts.

10.    I submit this Declaration in support of PCT's complaint against Yuchen "Justin" Sun ("Sun") and Polo Digital Assets LTD ("Polo") (Sun and Polo are referred to collectively herein as, "Defendants") .

11.    In connection with this Declaration, I reviewed testimony from former Prime executives and employees.

12.    I also reviewed Prime's bank account information at various financial institutions, including BMO Harris ("BMO"), Cross River Bank ("CRB"), Signature Bank ("Signature"), and Royal Business Bank ("RBB"), Prime's Internal Ledger (the "Internal Ledger"), API Log audit data, bank statement data, and blockchain data.

13.    Except as otherwise indicated herein, all facts set forth in this Declaration are based on: (i) my personal knowledge and/or on information provided to me by Prime, former Prime management and employees, Wind-Down Debtor, the Plan Administrator, and/or the Plan Administrator's professionals; or (ii) my review of relevant documents.

14.    Except as otherwise indicated herein, all conclusions and opinions set forth in this Declaration are based on: (i) the facts as known to me, including those set forth herein; (ii) my experience and knowledge of Prime's operations; and (iii) my experience and training as a professional.

15.    The opinions and conclusions expressed herein are subject to change based on additional data, facts, and information that may be received after this Declaration is executed, including, among other things, additional data, facts, and information that becomes available in the public domain or that is made available by the Wind-Down Debtor, the Plan Administrator, or other parties during discovery or otherwise.

## II.      Prime's Fiat Commingling

16.      Prime held and commingled fiat that customers transferred to it in omnibus bank accounts along with fiat transferred to it by thousands of Prime's other customers and fiat Prime generated from its business operations.

17.      Since fiat that customers transferred to Prime was commingled with fiat from other customers and fiat Prime generated from its business operations, Prime was forced to rely on its internal ledger (the "Internal Ledger") to keep track of transactions to identify how much Prime owed each of its customers.[3]  I was provided and reviewed Internal Ledger data.

18.      Prime also transferred funds between bank accounts that contained fiat transferred to Prime from customers and bank accounts that primarily contained fiat Prime generated from Prime's business activities.  These internal transfers further commingled fiat.

19.      According to the Internal Ledger, bank account statements, and bank reconciliation files I reviewed, Prime regularly made internal transfers between Prime's bank accounts.  Prime would move funds between its different bank accounts, regardless of the source of funds, on an as-needed basis to satisfy wire and Automated Clearing House ("ACH") requests.

20.      Prime had numerous bank accounts at different banks depending on the time period. Based on my review of the bank statements, during a given period, certain bank accounts were primarily used depending on the type of transaction.  For example, Prime predominantly used one omnibus bank account at BMO ("BMO x3077"), for incoming and outgoing wire transfers during 2023.

---

[3]      Deposition of ███████████, *In re Prime Core Technologies*, No. 23-11161 (Bankr. D. Del. Nov. 16, 2023) (the "████ Dep."), 89: 19–25.

21.     BMO x3077 contained commingled funds that had been transferred to it from Prime's other bank accounts as well as directly from Prime customers.

22.     A large volume of debits and credits occurred almost daily to and from BMO x3077. However, Prime's bank statements for BMO x3077 only include reference numbers regarding the movement of funds into or out of that account.  There are no other details within the bank statements. This makes it difficult to determine who was transferring funds into Prime and the recipients of outbound transfers.

23.     Prime also would regularly make internal transfers from BMO x3077 into a different omnibus bank account at BMO ("BMO x9934") to earn a higher rate of interest.  Most of the unused funds left in BMO x3077 at the end of each day would be transferred back to BMO x9934 as BMO x9934 provided a higher rate of interest than BMO x3077.  Transfers between the bank accounts were described in Prime's bank statements as "PC Transfers".

24.     It appears that the vast majority of funds contained in BMO x9934 were commingled funds that had been transferred into BMO x9934 from the commingled BMO x3077 account. BMO x9934 also contained some funds that had been transferred into it from other commingled bank accounts held by Prime, such as CRB and Signature bank accounts.

25.     These CRB and Signature bank accounts operated in a largely similar manner as BMO x3077—*i.e.*, they contained commingled funds that had been transferred from other Prime bank accounts containing funds transferred to Prime by other Prime customers.

26.     For instance, "CRB x9892" and "CRB x4453" were omnibus bank accounts at CRB utilized by Prime.  These accounts were used primarily for internal transfers and payments via automated clearing house ("ACH").  Thus, during 2023, it appears that Prime primarily utilized either

BMO x3077, CRB x9892, or CRB x4453 depending on whether Prime needed to make transfers via wire or ACH.

27.     Due to the extensive commingling of funds within Prime's omnibus bank accounts, the funds held within these omnibus bank accounts cannot be attributed to specific customer deposits or withdrawals.

28.     Prime bank statements reflect the movement of funds between Prime bank accounts but do not include details sufficient to identify where those funds originally came from, whom they were being transferred to, or for what reason they were being transferred.

29.     Transfers between Prime accounts usually occurred in round dollars, as opposed to specific amounts based on specific transactions.  This suggests that Prime likely estimated the amount of funds to transfer instead of transferring specific funds in response to specific transaction activity.  This practice further adds to the difficulty in connecting transfers with specific transactions reflected in Prime's Internal Ledger.

30.     Based on my experience, numerous internal transfers amongst bank accounts without accurate recordkeeping can be indicative of fraud.  It also can suggest that an entity is facing cash shortfalls and is moving funds around to manage funds in a manner to satisfy withdrawals or other immediate, pressing cash needs.

**III.     Prime's Inadequate Reconciliation Processes**

31.     According to Prime's records and sworn testimony from former employees, Prime did not perform regular or timely reconciliations of accounts and, at least before March 2021, any reconciliations that Prime conducted were manual.[4]

---

[4]     *See* Deposition of ███████, *In re Prime Core Technologies*, No. 23-11161 (Bankr. D. Del. Mar. 29, 2024) (the "███ Dep."), 19:23 - 20:13.

32.     Reconciliation processes are critical internal controls.  They enable companies to identify potential errors or fraud so that their books and records are accurate.  They also permit companies to validate the amount of cash that the company holds.  Reconciliation processes typically consist of comparing transactions or other financial activities between the company's internal records and the bank records to verify the data and the proper amounts of account balances.

33.     For Prime's fiat, reconciliation processes generally consisted of comparing the amounts and transaction activity reflected on Prime's Internal Ledger during a given time period with the bank account activity during that same time period.

34.     ███████ ("███████"), Prime's former SVP of Operations and Reconciliations, largely designed Prime's reconciliations processes.  ███████ explained:

> Q:     Okay.  And when you moved into your new role in March of 2021 as operations and reconciliations, what was the reconciliations piece?
>
> A:     Prime Trust did not have reconciliation tools, essentially.  So my responsibility was in kind of designing the reconciliation tools.
>
> Q:     What's a reconciliation tool?
>
> A:     Somebody makes a request for a transaction: How can you basically reconcile that it occurred.  If that makes sense.
>
> Q:     Can you—can you expand a little bit?  So a customer says, I want to buy Bitcoin?
>
> A:     Yeah.  So, well, it wouldn't be necessarily for the purchases, but, for instance, a client's account says that they have one Bitcoin in their account.  Can you confirm that it was received on the Ledger.
>
> Q:     Okay.  So you're confirming that you actually have the assets that your client's accounts are reflecting they have; is that right?
>
> A:     In a way, yeah.  So it was assuming that if we had assets displayed, you know, do we actually have them.[5]

---

[5]     ███ Dep., 18:3–19:7.

35.    ███████ ("███████"), Prime's former Chief of Regulatory Affairs, described "reconciliations" as "taking the general ledger and reconciling it to a bank statement; taking customer, you know, account statements and reconciling those to the bank statement wherever those assets may be held.  When I say assets, I'm talking about Fiat."[6]

36.    Both ███████ and ███████ testified as to the insufficiency of Prime's reconciliation processes during their tenures with Prime.

37.    ███████ testified: "Reconciliations were not being done in a timely manner."[7]

38.    ███████ discussed Prime's reconciliations process both before and after March 2021:

> A:    There just wasn't very good reconciliation tools.  Everything was done manually.  So I was brought in to work on building these tools and making them more automated . . .
>
> . . .
>
> Q:    Okay.  So you weren't—you weren't responsible for fixing whatever happened prior, you were responsible for forward-looking projects for reconciliation; is that the idea?
>
> A:    Yeah, I was—I was put in that position to essentially build the automated systems for transactions looking forward.  Once the system was, I guess you can say, built, you know, I was let go of the responsibilities of building it, and there were teams that were brought on to essentially do the reconciliation.[8]

39.    For crypto, Prime's reconciliation processes were in the beginning stages of being developed in early 2022 and generally consisted of comparing the amounts and transaction activity reflected on Prime's Internal Ledger and Prime's Fireblocks environment.

---

[6]    ███ Dep., 16:4–9.

[7]    *Id.* at 38: 23–24.

[8]    ███ Dep., 19:25–20:5; 21:14–22:2.

40.     I also reviewed internal Prime communications concerning commingling of fiat and crypto as well as asset reconciliation.

41.     For example, on December 17, 2022, ██████████ ("██████████"), Prime's former General Counsel, sent an email to several Prime employees concerning a Nevada Financial Institutions Division ("Nevada FID") request for information regarding Prime's statement that it "invested in additional Ether[e]um using fiat currency from its omnibus accounts."[9]  Specifically, Nevada FID requested that Prime "[p]lease provide a list of clients impacted from the investment and which omnibus accounts were utilized."[10]

42.     On December 19, 2022, ██████ responded: "Bank account, as in where was the USD pulled to credit our ledger and eventually purchased the ETH on our ledger?  If so, I don't believe any specific bank accounts were used, *as management considered all funds tangible in our omnibus model*.  In their decision, no bank movements were needed/done before the credits were requested to the ledger."[11]

43.     On December 28, 2022, ██████████, former SVP and Head of Banking and Trust Operations, responded: "██████, ██████, and I met today.  We are in agreement that we are not able to specify what customer is out of the funds due to our omnibus structure."[12]

44.     Given the above testimony from former executives, it is clear that Prime did not perform regular or timely reconciliations, which demonstrates that Prime lacked critical internal controls.  Based on my experience, without such internal controls, companies cannot readily identify

---

[9]    ██████ Dep., Ex. 28 (internal quotations omitted).

[10]   *Id.*

[11]   *Id.*

[12]   *Id.*

potential errors or fraud to verify and ensure that their data and records are accurate.  Therefore, Prime did not have adequate safeguards or processes in place to validate the amount of fiat and crypto that the company held and accurately attribute the proper balances to Prime customers.

## IV.    The 98f Wallet Caused Further Commingling of Fiat and Crypto

45.    The most notable example of Prime's commingling of both fiat and crypto and its failure to reconcile its Internal Ledger was when Prime used fiat transferred to it by its customers to make purchases of ETH to replace ETH that was locked in an inaccessible "multi-sig" digital wallet (the "98f Wallet").[13]

46.    In December 2021, one of Prime's customers, Plutus Financial Inc. d/b/a Abra and Plutus Lending LLC ("Abra"), requested a transfer from Prime of 5,867.71 ETH (worth approximately $24,000,000.00 at the time[14]).  At this time, Prime realized that Abra had been transferring ETH into a forwarder digital wallet[15], which automatically had been forwarding the ETH into the inaccessible 98f Wallet.

47.    By December 2021, Abra had already transferred more than 11,000 ETH (worth approximately $45,000,000.00 at the time[16]) into the 98f Wallet.

---

[13]    A "multi-sig" digital wallet requires digital signatures of multiple individuals to access and transact with the crypto stored on the digital wallet.  The "98f Wallet" is referred to herein as such because it has a digital address ending in the characters "98f."

[14]    Price data was obtained from CoinGecko.com.  The monthly closing price for ETH (which was approximately $4,085) was calculated by adding each day's closing price and dividing the daily closing price by the number of days in the month.

[15]    A "forwarder digital wallet" is a type of digital wallet that automatically sends crypto that the digital wallet receives to another digital wallet.  This is often used by businesses to enhance security and streamline operations.

[16]    Price data was obtained from CoinGecko.com.  The monthly closing price for ETH (which was approximately $4,085) was calculated by adding each day's closing price and dividing the daily closing price by the number of days in the month.

48.     Prime decided to satisfy Abra's December 2021 (and subsequent) ETH transfer requests by using fiat transferred to Prime by other customers to purchase replacement ETH from one of Prime's liquidity providers ("Liquidity Provider").

49.     Regarding this decision to use commingled fiat to purchase replacement ETH from Liquidity Provider, ███████ ("██████"), Prime's former Chief Operating Officer, testified as follows:

> Q:     So [Customer is] depositing into a wallet that you don't have access to and is requesting withdrawals.  Prime funds those withdrawals.  How does it do it?
>
> A:     I would defer to ███ on that.  But essentially it was use of omnibus funds, is my understanding.
>
> Q:     What's use of omnibus funds?
>
> A:     As I mentioned before, my understanding is we maintained omnibus accounts, meaning fiat accounts and crypto accounts, crypto wallets that had basically commingling of customer funds.
>
> Q:     And which funds were used to make the purchases of the ETH to fund the transactions?
>
> A:     Funds from the fiat account.  Fiat omnibus account.  Is my understanding. Once again, ███ would know specifically.[17]

50.     Abra continued to request ETH transfers, meanwhile the ETH in the 98f Wallet remained inaccessible.  Between December 23, 2021 and March 30, 2022, Abra requested that Prime transfer a total of 48,034.57 ETH (worth approximately $145,000,000.00 at the time[18]).  Prime continued to use commingled fiat to purchase replacement ETH from Liquidity Provider.  During

---

[17]    Deposition of ███████, *In re Prime Core Technologies*, No. 23-11161 (Bankr. D. Del. Nov. 16, 2023) (the "███ Dep."), 92:25–93:18.

[18]    Price data was obtained from CoinGecko.com between the dates of December 23, 2021 and March 30, 2022.  The price for ETH (which was approximately $3,031) was calculated by adding each day's closing price and dividing the daily closing price by the number of days in the time period..

that same period, Prime recorded ten different wires to Liquidity Provider's account, which purportedly represented new fiat transferred into Liquidity Provider's account to cover the ETH purchased from Liquidity Provider, as shown in the table below.

| Date | USD Internal Ledger "Wire" Transfer[19] Amount | ETH On-Chain Transfers |
|---|---|---|
| 12/23/2021 | $11,958,000 | 2,999.99 |
| 12/31/2021 | $12,158,250 | 3,250.00 |
| 1/6/2022 | $2,778,400 | 800.00 |
| 1/6/2022 | $7,293,300 | 2,100.00 |
| 1/22/2022 | $5,000,000 | 1,930.50 |
| 3/12/2022 | $4,644,000 | 1,800.00 |
| 3/15/2022 | $8,524,750 | 3,049.98 |
| 3/15/2022 | $8,043,000 | 3,000.00 |
| 3/29/2022 | $7,902,800 | 2,300.00 |
| 3/30/2022 | $8,065,048 | 2,347.22 |

51. As Prime did not actually receive any new funds, Prime used the commingled fiat that had been transferred to it by its customers to fund these replacement ETH purchases from Liquidity Provider.

52. The below diagram illustrates ten of the replacement ETH purchases that Prime made from Liquidity Provider, which it ultimately used to satisfy the withdrawal requests of Abra.

---

[19] Prime did not actually execute any of these wire transfers. *See* ▇▇ Dep., 164:22–165:10.



53.    Because the ETH that Abra had originally transferred to Prime was (and still is to this day) locked away in the inaccessible 98f Wallet, it is indisputable that the ETH that Prime transferred to Abra to satisfy its withdrawal requests could not be the same ETH that Abra had originally transferred to Prime.  The ETH that Abra received was purchased by Prime using commingled fiat that had been transferred to Prime by other customers.  Moreover, prior to Prime transferring ETH to Abra, the ETH was commingled with other ETH (transferred to Prime by Abra, Liquidity Provider, and other Prime customers) in the ~b2ea Wallet discussed above.  In short, (i) commingled fiat was used to purchase ETH, (ii) this ETH was then commingled with ETH that other customers had transferred to Prime, and (iii) commingled ETH was then transferred to Abra.

54.    Certain executives at Prime seem to have undertaken steps to corrupt Prime's internal records in connection with the replacement ETH purchases to make it appear as if Prime received incoming wire transfers to justify the increase in fiat account balances for Liquidity Provider.

55.     Specifically, Prime settled the ETH purchases from Liquidity Provider by "credit[ing]" the Liquidity Provider's customer account at Prime with fiat amounts equivalent to each ETH purchase.

56.     To "credit" Liquidity Provider's fiat customer balance with Prime, Prime had to input a "contribution" on Prime's Internal Ledger to make it appear as if Liquidity Provider had wired fiat to Prime.  However, Liquidity Provider did not actually wire fiat to Prime in connection with the ETH purchases.

57.     ████████ testified on this subject as follows:

A:      So let me—let me make sure I understand what you said.  You said how to get money to [Customer].  You meant how to get money to [Liquidity Provider]; right?

A:      Sorry, yeah, that's what I meant.  [Liquidity Provider].

Q:      Okay.  So in order to credit [Liquidity Provider's] cash account at Prime, there needed to be a contribution on the internal Ledger; is that right?

A:      Correct.

Q:      And once there is a contribution to the internal Ledger, then when [Liquidity Provider] goes to its account, it looks like there is more cash in the account; isn't that right?

A:      Correct.

Q:      There's not actually any more cash in the bank account; right?

A:      No, there is no—there is no credit of that money to the bank accounts, only to the Ledger.[20]

58.     This method of settlement of the ETH purchases from Liquidity Provider resulted in a discrepancy between the amount of fiat that Prime's Internal Ledger reflected and the actual amount of fiat that Prime held in its bank accounts:

---

[20]   ████ Dep., 155:11–156:9.

Q:      [T]here's going to be cash reflected in [Liquidity Provider's] account, but that cash is not actually in the bank; is that right?

A:      Correct.  Correct.

Q:      And the cash that [Liquidity Provider] would have had, if they were to withdraw, that's just in the omnibus cash account, that has everybody else's—all other customers' cash in it, too; right?

A:      Correct . . .

Q:      I see.  But the Ledger would show an amount owed to your customers that's higher than the amount that you're holding in your bank?

A:      Exactly.

Q:      That's ultimately what happened; right?

A:      Yeah, that's exactly what happened.[21]

59.      The illustrative chart below[22] demonstrates that Prime's Internal Ledger falsely indicated that there were "incoming" wire transfers to Liquidity Provider between December 23, 2021 and March 30, 2022:

| created_date | cash_transaction_id | name | funds_transfer_type | amount |
|---|---|---|---|---|
| 12/23/2021 | ~0457 | Liquidity Provider | wire | 11,958,000.00 |
| 12/31/2021 | ~0902 | Liquidity Provider | wire | 12,158,250.00 |
| 1/6/2022 | ~b83d | Liquidity Provider | wire | 2,778,400.00 |
| 1/6/2022 | ~5aaa | Liquidity Provider | wire | 7,293,300.00 |
| 1/22/2022 | ~6c81 | Liquidity Provider | wire | 5,000,000.00 |
| 3/12/2022 | ~777d | Liquidity Provider | wire | 4,644,000.00 |
| 3/15/2022 | ~2910 | Liquidity Provider | wire | 8,043,000.00 |
| 3/15/2022 | ~1b2e | Liquidity Provider | wire | 8,524,750.00 |
| 3/29/2022 | ~113f | Liquidity Provider | wire | 7,902,800.00 |
| 3/30/2022 | ~ecc3 | Liquidity Provider | wire | 8,065,047.90 |
| | | | **Total** | **76,367,547.90** |

---

[21]    *Id.* at 144:11–20; 146:7–15.

[22]    This illustrative chart is not an image directly copied from Prime's Internal Ledger. Rather, this chart contains data related to certain transactions that was pulled from Prime's Internal Ledger.

60.     Prime's bank account statements do not reflect any of the above wire transfers ever occurring.

61.     For example, the above data reflects that Prime received the following incoming wire transfers: (i) $11,958,000.00 on December 23, 2021; and (ii) $12,158,250.00 on December 31, 2021. These transfers correspond with the first two replacement ETH purchases from Liquidity Provider. However, these wires are not reflected in Prime's relevant bank account statements.[23]

62.     ███████ confirmed that these purported incoming wire transfers would not be identifiable in any Prime bank account statements:

Q:     When it says funds transfer in column F and it says "wire, wire, wire."  Do you see that?

A:     Yes.

Q:     There were no wire transfers; right?

A:     Yes.

Q:     Just to be clear.  Yes, there were not any wire transfers in connection with these [Liquidity Provider] purchases; right?

A:     Yes, there were no wire transfers . . .

Q:     And we can take you through—we've looked at it, but it wouldn't surprise you that there were no wire transfers reflected in the bank account statements for Prime Trust concerning these transactions; right?

A:     Correct.

Q:     And that's because there were no wire transfers out to [Liquidity Provider] in connection with these transactions; right?

A:     No wire transfers in.[24]

---

[23]  *See* Prime's December 23, 2021, and December 31, 2021, bank account statements from Signature Bank attached as **Exhibits 2 and 3**, respectively.

[24]  ████ Dep., 164:22–165:10; 166:5–15.

63.     As discussed herein, certain executives at Prime seem to have undertaken steps to corrupt Prime's internal record keeping.  The false entries to Prime's Internal Ledger further add to the difficulty in connecting transfers with specific transactions reflected on Prime's Internal Ledger.

**V.     Defendants' Transfers During the Preference Period**

64.     To analyze the fiat transactions between Prime and Defendants, I reviewed Prime's Internal Ledger, API log audit data, bank statements, and bank reconciliations.

65.     I identified Defendants' transactions recorded in Prime's Internal Ledger by searching for internal account names attributed to Defendants on the Internal Ledger.   These internal account names did not correspond with actual unique, segregated bank accounts.

66.     In my review of fiat transactions that occurred during the Preference Period,[25] I confirmed that there were outgoing transfers from Prime to or for the benefit of Defendants that totaled $9,083,903.77 (the "Transfers").

67.     All of the fiat transfers between Prime and Defendants during the Preference Period were transferred from BMO x3077.

68.     I verified that each of the Transfers from Prime to or for the benefit of Defendants was directed by Defendants during the Preference Period based on API log audit data or per the signed disbursement authorization from Defendants.[26]  Using API log audit data, I confirmed that Chi Chan Che, utilizing the email address chichan.che@tron.network, directed the Transfers for or on behalf of Sun and Polo.[27]

---

[25]   Prime and certain of its affiliates filed the above-captioned Chapter 11 Cases on August 14, 2023 (the "Petition Date"), meaning that Prime's preference period occurred between May 16, 2023 and August 14, 2023 (the "Preference Period").

[26]   API log audit data identifies which customer's email initiated a transaction providing an audit trail.

[27]   Attached to this Declaration as **Exhibit 4** is API log audit data for the Transfers.

69.    One of the Transfers to Sun, totaling $1,186,475.37, was directed by Defendants based on a signed disbursement authorization from Defendants.

70.    I identified that Defendants did not transfer any potential subsequent new value to Prime after receiving the Transfers.  I thus calculated the preference claim against Defendants to be no less than $9,083,903.77.   My analysis evaluated the transaction date and time provided in the bank and API log audit data for each incoming and outgoing transfer during the Preference Period.

* * *

71.    In sum, Prime's Internal Ledger, Prime's bank account data, Prime's repeated transfers of fiat between commingled omnibus bank accounts, Prime's use of fiat from the omnibus bank accounts to purchase ETH because Prime lost access to the 98f Wallet, Prime's falsified Internal Ledger wire transfer entries covering Prime's replacement ETH purchases, and Prime's gross failures in fiat segregation, reconciliation processes, and inability to distinguish fiat transferred to Prime by certain customers from company fiat, or from fiat transferred to Prime by other customers, make it clear that Defendants and Prime:  (i) cannot identify the specific fiat that Defendants transferred to Prime; and (ii) cannot identify which specific funds in Prime's commingled bank accounts were used for the fiat transfers from Prime to Defendants during the Preference Period.

Dated: August 12, 2025
       Jupiter, Florida

/s/ James P. Brennan
James P. Brennan
Senior Managing Director
J.S. Held, LLC

-18-

# EXHIBIT 1

**JP Brennan**
Senior Managing Director, Global Investigations, Cryptocurrency



## Key Expertise



- Forensic Accounting
- Anti-money Laundering ("AML")
- Compliance
- Investigations
- Damages
- Financial Crime
- Fraud
- Asset Tracing (Crypto + Traditional)
- Money Services Business ("MSBs")
- Operational Due Diligence
- Cryptocurrency Security Standard ("CCSS")
- KYC / Onboarding
- Managed / Outsourced Services

## Education

Master of Science (MS), St. John's University, 2002

Bachelor of Science (BS), St. John's University, 2001

## Project Geographical Experience

U.S., UK, Singapore, Bermuda, Canada, Bahamas, Gibraltar, Cyprus, Switzerland

## Languages

English

## Summary of Experience

JP Brennan is the Global Head of Fintech, Payments, Crypto Compliance and Investigations at J.S. Held. He brings over 20 years of experience in forensic accounting, damage calculation, auditing, litigation consulting, anti-money laundering ("AML") compliance, cryptocurrency regulatory compliance, OFAC/sanctions review, complex enhanced and operational due diligence, and bankruptcy. He has an in-depth understanding of the complexities that many FinTech's are faced with concerning their regulatory framework as well as those issues from a financial crime compliance perspective.

Mr. Brennan has substantial experience in providing complex forensic accounting and financial fraud investigative services, cryptocurrency asset / wallet tracing, development and implementation of AML programs, outsourced Chief Compliance Officer services, as well as providing managed services for large scale remediation and compliance projects. His clients include major law firms, cryptocurrency exchanges (centralized / decentralized), digital asset issuers, custodians, multinational banks, funds, payment processors, financial institutions, and investors.

His expert experience includes such high-profile matters such as Bernard L. Madoff Investment Securities (investigation), Lehman Brothers (bankruptcy investigation), Caesars Entertainment Operating Corp. (examiner report), Bank of New York-Mellon (compliance monitorship), Quadriga CX (crypto asset tracing), and LUNA Foundation Guard (crypto asset tracing).

## Speaking Engagements

Mr. Brennan has presented in various forums as well as moderated multiple cryptocurrency related panels that included topics such as investigations, risk and regulatory, asset recovery, crypto in bankruptcy as well as complex forensic tracing.

## Professional Affiliations/Memberships/Licenses/Training

Association of Certified Fraud Examiners

Certified Bitcoin Professional

## Role at J.S. Held

JP is involved with matters in consulting as well testifying expert capacity. These matters include fiat and digital asset forensic and tracing investigations, recovery of assets, the development, implementation and assessment of regulatory programs, monitorships, training for law enforcement agencies, government licensing, investigations on behalf of examiners, receivers, forensic accounting, and trustees.

## Contact

48 Wall Street, New York, NY 100436 | +1 212-952-5000 (O) | +1 917-244-8931 (M) | jp.brennan@jsheld.com

J.S. Held and its affiliates and subsidiaries are not a certified public accounting firm and do not provide audit, attest, or any other public accounting services. J.S. Held is not a law firm and does not provide legal advice. All rights reserved.

**JP Brennan**
Senior Managing Director, Global Investigations, Cryptocurrency



## Work Experience

J.S. Held, LLC, Senior Managing Director, 2022 – Present

Kroll, LLC (f/k/a Duff & Phelps), Associate Managing Director, 2017 – 2022

Alvarez & Marsal Holdings, LLC, Director, 2012 – 2017

FTI Consulting, Inc., Director, 2004 – 2012

Deloitte & Touche LLP, Audit Staff, 2002 – 2004

## Select Litigation and Project Experience

### Cryptocurrency and Blockchain Related:

- Retained as the cryptocurrency expert in the Chapter 11 Bankruptcy Proceedings for Prime Trust due to insolvency. Provides litigation consulting and expert witness services, related to the investigation of the company as well as performance of other analysis including but not limited fraudulent conveyances and preference payments.
- Retained by a U.S. cryptocurrency exchange as an expert to defend against customer allegations involving the exchanges breach of fiduciary duty and lack of an appropriate AML program.
- Retained in the Voyager Digital Bankruptcy to investigate and recover fraudulent ACH customer payments.
- Retained by a Web3 company that provides infrastructure and applications to be built using its platform. Perform expert and litigation services to defend against allegations of market manipulations, inappropriate disclosure for sources and uses of funds, unjust enrichment, and breach of fiduciary duty.
- Luna Foundation Guard / Terraform Labs / Do Kwon – retained to produce an audit report and cryptocurrency tracing of the assets used to defend the peg of the UST algorithmic stablecoin. Additional work related to market manipulation, wash trading, improper public disclosures, and manipulation of transactions on the Terra network.
- Retained by the Brazilian gov't to conduct the cryptocurrency asset tracing and recovery in the INDEAL pyramid scheme.
- Retained as the expert in a cryptocurrency employment dispute related to the payment of assets at genesis and calculation the associated staking rewards and airdrops on the Cosmos Network.
- Retained as the expert by the Cred Inc. Liquidation Trust to trace and investigate the theft and fraudulent transfer of assets by Company executives.
- Retained by Bo Shen in the recovery of over $40 million stolen from his personal wallet.
- QuadrigaCX – retained by the receiver (E&Y) to conduct the tracing of cryptocurrency assets.
- Retained as the financial adviser in the EminiFX bankruptcy and investigation.
- Retained by the Canadian courts in the Index Finance hack as the custodian for the cryptocurrency assets stolen.
- Retained as the expert in a well-known international gambling site dispute.
- Retained in the USA v. Ian Freeman (formerly Ian Bernard) and Aria DiMezzo (formerly James Baker) to assist with various litigation support services.
- Conducted and performed operational due diligence for financial and crypto related platforms including but not limited to: trade execution, custody, and third-party providers.
- Often retained by bitcoin atm operators, crypto lenders, crypto funds, crypto exchanges, payment processors, and funds to conduct independent AML reviews.

J.S. Held and its affiliates and subsidiaries are not a certified public accounting firm and do not provide audit, attest, or any other public accounting services. J.S. Held is not a law firm and does not provide legal advice. All rights reserved.

**JP Brennan**
Senior Managing Director, Global Investigations, Cryptocurrency



- Developed and implemented tracing and monitoring processes and technologies for a crypto money servicer business ("MSBs").
- Retained by the receiver in a Canadian cryptocurrency exchange investigation and recovery of assets.
- Retained by a large Seychelles-based cryptocurrency exchange to provide a report on proper OTC related procedures.
- Successfully performed an investigation into the fraudulent theft of cryptocurrency related assets of a crypto lender.
- Member of an international FATF committee working on the Travel Rule for Virtual Asset Providers ("VASPs").
- Performed the outsourcing of cryptocurrency asset reviews for a major US Cryptocurrency Exchange.
- Provide Managed Services for enhanced due diligence procedures for a major US Cryptocurrency Exchange.
- Retained by a U.S. Cryptocurrency Exchange to address regulatory concerns regarding their geo-fencing of IP addresses.
- Retained by a U.S. crypto lender in connection with their 2017 initial coin offering ("ICO") to provide recission payments to investors.
- Conducted cryptocurrency security standard ("CCSS") implementations and assessments.
- Conduct annual FBI Training – "How to Conduct Cryptocurrency Investigations."

## Non-Cryptocurrency and Blockchain Related:

- Provided investigative services and litigation support to the court-appointed trustee for the liquidation of Bernard L. Madoff Investment Securities and his counsel.  Engagement assistance to date has included the day-to-day direction and supervision of teams in areas including forensic investigation, data analysis and litigation consulting.
- Retained by the US Federal Reserve Bank to review AML Programs for their 12 branches.
- Served on the team selected by the U.S. Attorney offices in the Eastern and Southern Districts of New York and Western Pennsylvania to support the monitoring of the non-prosecution agreements of both The Bank of New York and Mellon Financial Corporation, to monitor and report on the state of the banks' suspicious activity reporting practices and AML procedures.
- Served on the monitorship team for the Standard Chartered Bank.
- Provided litigation consulting and expert witness services, including expert report preparation and deposition and trial preparation for a multi-billion-dollar accounting malpractice case filed in a class action against one of the major accounting firms. The case involved review and analysis of several years of audit work papers as well as research and analysis.
- Provided litigation consulting, including expert report preparation and deposition and trial preparation for an oil and gas company to determine whether a series of corporate transactions constituted a fraudulent conveyance and as a result rendered the company insolvent.
- Created onboarding policies and procedures for banks, hedge funds, as well as crypto funds and exchanges.
- Served on the investigations team, retained by Caesars Entertainment Operating Company, Inc. ("CEOC"), Richard J. Davis, to investigate and determine whether fifteen transactions between CEOC and the leveraged buyout sponsors ("LBO") arose to constituted constructive fraudulent transfers, actual fraudulent transfers (based on intent to hinder or delay creditors) and breaches of fiduciary duty.
- Expert support work on the determination of payments to creditors in the Nortel Networks bankruptcy.
- Expert support work on the calculation of damages / lost profits for a pharmaceutical dispute.
- Expert support in the investigation into various matters within the Lehman bankruptcy.
- Expert support in the investigation of Allen Stanford.
- Provided and oversaw a team of 350+ compliance professionals to help meet a New York State Department of Financial Services remediation for a large US-based cryptocurrency exchange.
- Hired as the outsourced CCO multiple payment processors that are going through the money transmission licensing process.

J.S. Held and its affiliates and subsidiaries are not a certified public accounting firm and do not provide audit, attest, or any other public accounting services. J.S. Held is not a law firm and does not provide legal advice. All rights reserved.

**JP Brennan**
Senior Managing Director, Global Investigations, Cryptocurrency



## Speaking Engagements and Articles

-   Law360 article, Using Data To Arm Against Future Crypto Market Turbulence", December 16, 2022.
-   Luna Foundation Guard release, "Today, LFG releases the technical audit report conducted by JS Held, an experienced third-party auditing firm, providing full transparency into the trading, blockchain records, and efforts of LFG and TFL to defend the price of TerraUSD ($UST) between May 8th & May 12th, 2022", November 16, 2022.
-   Brave NewCoin article, "The Cryptocurrency Regulatory Framework: How Countries are Approaching the Virtual Currency", March 2022.
-   Wolters Kluwer Banking and Financial Services Policy Report – April 30, 2019, "The Curios Case of Crypto."
-   Kroll article, "Cryptocurrencies: Protecting Your Downside in the Face of Uncertainty", May 2018.
-   Medium Article Contributor: https://medium.com/@james.p.brennan1.
-   Official Monetary and Financial Institutions Forum ("OMFIF") Digital Monetary Institute Symposium 2021, "Cryptocurrency's Regulatory Impact", September 2021.
-   MIT: Center for Real Estate," Real Disruption - How Technology is Changing and Challenging Real Estate", 2017.
-   Kroll, "Examining the Anti-Money Laundering (AML) Risks and Red Flags of Crypto Exchanges", October 2021.
-   BPP Continuing Education, "What you need to know when your clients are considering crypto", 2021.
-   Association of Certified Fraud Examiners, "The Future of AML and Blockchain", May 2021.
-   JS Held Thought Leadership Related Articles.

## Testimony

-   *Michael Sofaer v. BKCM, LLC, Supreme Court of the State of New York, Country of New York.*
-   *Paul Merkley v. Gemini Trust Company, LLC,* JAMS Arbitration.

J.S. Held and its affiliates and subsidiaries are not a certified public accounting firm and do not provide audit, attest, or any other public accounting services. J.S. Held is not a law firm and does not provide legal advice. All rights reserved.

# EXHIBIT 2

# SIGNATURE BANK

PRIVATE CLIENT GROUP 159
485 MADISON AVENUE
NEW YORK, NY 10022


PRIME TRUST LLC                    8-159
BAM CLEARING
330 S RAMPART BLVD SUITE 260
LAS VEGAS NV  89145

See Back for Important Information


Primary Account:  ████6126          0

| Date | Description | |
|------|-------------|--|
| | OBI:  MAGUIEXPRESS SA AR QCCUSEGFZ26,MAGUIEXPRESS S A | |
| | OBI: | |
| | OBI: | |
| Dec 22 | INCOMING WIRE | 236,562.50 |
| | REF#  20211222B6B7261F00311312221031FT01 | |
| | FROM: MARXSMITH LLC          ABA:   026009593 | |
| | BANK: | |
| | OBI:  GOODS REFERENCE CODE: QNCUSQTAN4Y | |
| | OBI: | |
| | OBI: | |
| Dec 22 | INCOMING WIRE | 250,000.00 |
| | REF#  20211222B6B7261F00174112220801FT01 | |
| | FROM: ████████          ABA:   021000021 | |
| | BANK: | |
| | OBI:  QCCUSGEFG | |
| | OBI: | |
| | OBI: | |
| Dec 22 | INCOMING WIRE | 250,000.00 |
| | REF#  20211222B6B7261F00307712221027FT01 | |
| | FROM: PAXFUL USA INC          ABA:   026013356 | |
| | BANK: | |
| | OBI:  QCCUSK934, PAXFUL, INC 420003911352 | |
| | OBI: | |
| | OBI: | |
| Dec 22 | INCOMING WIRE | 300,000.00 |
| | REF#  20211222B6B7261F00576012221506FT01 | |
| | FROM: ICHIOKA VENTURES LLC          ABA:   121000248 | |
| | BANK: | |
| | OBI:  FUNDS FOR REFERENCE QCCUSGMMK | |
| | OBI: | |
| | OBI: | |
| Dec 22 | ONLINE TRANSFER CREDIT | 60,000,000.00 |
| | ONLINE XFR FROM: XXXXXX6223 | |
| Dec 23 | INCOMING WIRE | 26.00 |
| | REF#  20211223B6B7261F00620912231555FT01 | |
| | FROM: CP CONSTRUCTION VENTURES LLC          ABA:   324377613 | |
| | BANK: | |
| | OBI:  QNCUS9QXJKZ | |
| | OBI: | |

**SIGNATURE BANK**

Statement Period
From December  01, 2021
To    December  31, 2021
Page  141 of  426

PRIVATE CLIENT GROUP 159
485 MADISON AVENUE
NEW YORK, NY 10022

PRIME TRUST LLC                          8-159
BAM CLEARING
330 S RAMPART BLVD SUITE 260
LAS VEGAS NV  89145

See Back for Important Information

Primary Account: ▇▇▇6126          0

| Date | Description | |
|---|---|---|
| | OBI: | |
| Dec 23 | INCOMING WIRE | 200.00 |
| | REF#  20211223B6B7261F00269412231010FT01 | |
| | FROM: ▇▇▇▇▇▇▇              ABA:   31209536 | |
| | BANK: CITIBANK NA | |
| | OBI:  QNCUSV42DNZ | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 400.00 |
| | REF#  20211223B6B7261F00562312231459FT01 | |
| | FROM: ASIAM RESOURCES LLC      ABA:   121000248 | |
| | BANK: | |
| | OBI:  QNCUSXZMYKW | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 800.00 |
| | REF#  20211223B6B7261F00416212231232FT01 | |
| | FROM: SYNAPSE FINANCIAL TECHNOLOGIES   ABA:   084106768 | |
| | BANK: | |
| | OBI:  SIGNATURE BANK NEW YORK, NY, US 61C476A938BC7F2CA4985F | |
| | OBI:  B0/QCCUSYZX4, PINE GROVE CONSULTING, INC. 420056235618 | |
| | OBI:  ; @FREELANCEVZLA; SERVICES | |
| Dec 23 | INCOMING WIRE | 2,000.00 |
| | REF#  20211223B6B7261F00186112230813FT01 | |
| | FROM: 1/FBO ▇▇▇▇▇▇          ABA:   NFSCUS3B | |
| | BANK: NATIONAL FINANCIAL SERVICES LLC | |
| Dec 23 | INCOMING WIRE | 2,675.00 |
| | REF#  20211223B6B7261F00419812231235FT01 | |
| | FROM: ▇▇▇▇▇▇             ABA:   021000021 | |
| | BANK: | |
| | OBI:  CUSCQNZ6H | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 4,545.00 |
| | REF#  20211223B6B7261F00399012231212FT01 | |
| | FROM: HERMANN, LLC           ABA:   021000021 | |
| | BANK: | |
| | OBI:  QCCUSAZ7H - THE COIN TRADING CO LLC420034051586 | |
| | OBI: | |

**Signature** | SIGNATURE BANK

Statement Period
From December  01, 2021
To    December  31, 2021
Page   142 of   426

PRIVATE CLIENT GROUP 159
485 MADISON AVENUE
NEW YORK, NY 10022

PRIME TRUST LLC                        8-159
BAM CLEARING
330 S RAMPART BLVD SUITE 260
LAS VEGAS NV  89145

See Back for Important Information

Primary Account: ███████6126          0

| Date | Description | |
|---|---|---|
| | OBI: | |
| Dec 23 | INCOMING WIRE | 5,000.00 |
| | REF#  20211223B6B7261F00529812231428FT01 | |
| | FROM: ██████████          ABA:  321178158 | |
| | BANK: TULARE COUNTY FCU | |
| | OBI:  QCCUSAZ7HTHE COIN TRADING COMPANY, LLC420034051586 | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 5,500.00 |
| | REF#  20211223B6B7261F00608112231544FT01 | |
| | FROM: ███████          ABA:  121000248 | |
| | BANK: | |
| | OBI:  QNCUSFAVQME   COINMETRO | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 6,000.00 |
| | REF#  20211223B6B7261F00213512230900FT01 | |
| | FROM: LA GUACAMAYA LLC          ABA:  021000021 | |
| | BANK: | |
| | OBI:  QCCUSYZX4, PINE GROVE CONSULTING,INC. 420056235618 | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 7,955.00 |
| | REF#  20211223B6B7261F00580912231515FT01 | |
| | FROM: BANK OF AMERICA          ABA:  026013576 | |
| | BANK: SIGNATURE BANK | |
| Dec 23 | INCOMING WIRE | 8,500.00 |
| | REF#  20211223B6B7261F00029512230255FT01 | |
| | FROM: ██████          ABA:  31209536 | |
| | BANK: CITIBANK NA | |
| | OBI:  QCCUSZ9EKRN, FINANLEADS S A | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 8,500.00 |
| | REF#  20211223B6B7261F00503712231401FT01 | |
| | FROM: ██████          ABA:  021000021 | |
| | BANK: | |
| | OBI:  QCCUSWHQFN7, STILLMAN DIGITAL LLC420048617770 | |
| | OBI: | |

**Signature** | SIGNATURE BANK

Statement Period
From December 01, 2021
To   December 31, 2021
Page  143 of  426

PRIVATE CLIENT GROUP 159
485 MADISON AVENUE
NEW YORK, NY 10022

PRIME TRUST LLC                    8-159
BAM CLEARING
330 S RAMPART BLVD SUITE 260
LAS VEGAS NV  89145

See Back for Important Information

Primary Account: ████6126        0

| Date | Description | |
|---|---|---|
| | OBI: | |
| Dec 23 | INCOMING WIRE | 9,500.00 |
| | REF#  20211223B6B7261F00613612231549FT01 | |
| | FROM: ████████████         ABA:  121000248 | |
| | BANK: | |
| | OBI:  QCCUSZ9EKRN FINANLEADS SA | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 10,000.00 |
| | REF#  20211223B6B7261F00378112231153FT01 | |
| | FROM: ████████ OR ████████   ABA:  021000021 | |
| | BANK: | |
| | OBI:  QNCUSZRQ6C3 | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 10,500.00 |
| | REF#  20211223B6B7261F00549512231446FT01 | |
| | FROM: COMMODORE MANAGEMENT LLC   ABA:  102000021 | |
| | BANK: | |
| | OBI:  INVESTMENT ON SECURITIESQCCUSAZ7H, THE COIN TRADING CO | |
| | OBI:  MPANYLLC 420034051586 | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 14,700.00 |
| | REF#  20211223B6B7261F00303312231045FT01 | |
| | FROM: ████████████       ABA:  026009593 | |
| | BANK: | |
| | OBI:  SERVICES | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 19,782.95 |
| | REF#  20211223B6B7261F00275312231013FT01 | |
| | FROM: INTERNATIONAL TRADING COMMERCE   ABA:  021201383 | |
| | BANK: VALLEYNATIONALBANK | |
| | OBI:  REFERENCE CODE QCCUS9XF74Y MUNDUZ INTERNATIONAL | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 23,400.00 |
| | REF#  20211223B6B7261F00412412231228FT01 | |
| | FROM: TECC CONSULTING LLC   ABA:  121000248 | |

# SIGNATURE BANK

Statement Period
From December  01, 2021
To   December  31, 2021
Page   144 of   426

PRIVATE CLIENT GROUP 159
485 MADISON AVENUE
NEW YORK, NY 10022

PRIME TRUST LLC                         8-159
BAM CLEARING
330 S RAMPART BLVD SUITE 260
LAS VEGAS NV   89145

See Back for Important Information

Primary Account: ██████6126          0

| Date | Description | |
|---|---|---|
| | BANK: | |
| | OBI:  QCCUSZTF2-LOGISTIC FAST | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 23,500.00 |
| | REF#  20211223B6B7261F00060312230603FT01 | |
| | FROM: ███████████████      ABA:  026009593 | |
| | BANK: | |
| | OBI:  QNCUSHRDX | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 25,000.00 |
| | REF#  20211223B6B7261F00062512230608FT01 | |
| | FROM: ███████████████      ABA:  121000248 | |
| | BANK: | |
| | OBI:  QNCUSH6VPFC | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 25,000.00 |
| | REF#  20211223B6B7261F00328112230611FT01 | |
| | FROM: ███████████████      ABA:  121000248 | |
| | BANK: | |
| | OBI:  QNCUSH6VPFC | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 25,080.00 |
| | REF#  20211223B6B7261F00156812230801FT01 | |
| | FROM: UR CHOICE DISTRUBUTOR INC.      ABA:  021000021 | |
| | BANK: | |
| | OBI:  REFERENCE # QCCUS3D46 | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 33,000.00 |
| | REF#  20211223B6B7261F00244412230937FT01 | |
| | FROM: PND ADMINISTRATION SERVICES LLC      ABA:  021000021 | |
| | BANK: | |
| | OBI:  QCCUSYZX4, PINE GROVE CONSULTING,INC. 420056235618 | |
| | OBI: | |
| | OBI: | |

# SIGNATURE BANK

PRIVATE CLIENT GROUP 159
485 MADISON AVENUE
NEW YORK, NY 10022


PRIME TRUST LLC                          8-159
BAM CLEARING
330 S RAMPART BLVD SUITE 260
LAS VEGAS NV  89145

See Back for Important Information


Primary Account: ████6126          0

| Date | Description | |
|---|---|---|
| Dec 23 | INCOMING WIRE | 33,000.00 |
| | REF# 20211223B6B7261F00520312231416FT01 | |
| | FROM: INOVASUPERSTAR LLC            ABA:  021000021 | |
| | BANK: | |
| | OBI:  QCCUSYZX4, PINE GROVE CONSULTING,INC. 420056235618 | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 45,561.25 |
| | REF# 20211223B6B7261F00699512231734FT01 | |
| | FROM: PRIZEOUT CORP                 ABA:  026009593 | |
| | BANK: | |
| | OBI:  REFERENCE ID OXCUS2KFAXD | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 46,883.81 |
| | REF# 20211223B6B7261F00395912231208FT01 | |
| | FROM: VIRTUAL ASSETS LLC            ABA:  071902399 | |
| | BANK: | |
| | OBI:  TRADE SETTLEMENT              QCCUSWHQFN7, STILLM | |
| | OBI:  AN DIGITAL LLC 420048617770 | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 60,000.00 |
| | REF# 20211223B6B7261F00465612231322FT01 | |
| | FROM: ASPEN LAKE LLC/DBA COIN GENIE  ABA:  061110654 | |
| | BANK: THE COMMERCIAL BANK | |
| | OBI:  QCCUSWHQFN7, STILLMAN DIGITAL LLC420048617770 | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 64,000.00 |
| | REF# 20211223B6B7261F00150112230801FT01 | |
| | FROM: WAAVE TECHNOLOGIES INC.       ABA:  021000021 | |
| | BANK: | |
| | OBI:  QCCUS7VT4 | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 83,836.50 |
| | REF# 20211223B6B7261F00280112231022FT01 | |
| | FROM: DIGITAL ASSET MANAGEMENT LIMIT  ABA:  026013576 | |
| | BANK: | |

**SIGNATURE BANK**

PRIVATE CLIENT GROUP 159
485 MADISON AVENUE
NEW YORK, NY 10022


PRIME TRUST LLC                    8-159
BAM CLEARING
330 S RAMPART BLVD SUITE 260
LAS VEGAS NV  89145

See Back for Important Information


Primary Account: ██████6126        0

| Date | Description | |
|------|-------------|---|
| | OBI:  XACE LIMITED QCCUSQK4E | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 139,054.69 |
| | REF#  20211223B6B7261F00598012231532FT01 | |
| | FROM: PRIME TRUST, LLC AS AGENT FOR      ABA:   044000024 | |
| | BANK: | |
| | OBI:  PAYMENT | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 196,000.00 |
| | REF#  20211223B6B7261F00202212230840FT01 | |
| | FROM: MUNDUZ INTERNATIONAL INCORPORATED   ABA:   021000021 | |
| | BANK: | |
| | OBI:   REFERENCE CODE: QCCUS9 XF74Y -MUNDUZ INCORPORATED | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 200,000.00 |
| | REF#  20211223B6B7261F00535712231433FT01 | |
| | FROM: EMBLAZE ONE INC.               ABA:   021000021 | |
| | BANK: | |
| | OBI:   REFERENCE NO. QCCUSGMMK | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 212,500.00 |
| | REF#  20211223B6B7261F00686512231707FT01 | |
| | FROM: WESUPPLY SOLUTIONS, LLC        ABA:   043000096 | |
| | BANK: PNC BANK, N.A. | |
| | OBI:  QCCUS4JTVEP, ALTERPAY INTERNATIONALSOLUTIONS, LLC 4200 | |
| | OBI:  77366054 | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 233,471.25 |
| | REF#  20211223B6B7261F00039812230442FT01 | |
| | FROM: NORTH AMERICAN CAPACITY INSURANCE   ABA:   026009593 | |
| | BANK: | |
| | OBI:  40802346 0011793370-08-1-2021 Q/CCUSRV6P, PROGLOBIX LL | |
| | OBI:  C 4200843321.67, INV-0571  MOLECULAR /INV-0571/.02021 | |
| | OBI:  1468290/MOLECULAR PATHOLOGY | |
| Dec 23 | INCOMING WIRE | 236,562.50 |

# SIGNATURE BANK

PRIVATE CLIENT GROUP 159
485 MADISON AVENUE
NEW YORK, NY 10022

PRIME TRUST LLC                      8-159
BAM CLEARING
330 S RAMPART BLVD SUITE 260
LAS VEGAS NV  89145

See Back for Important Information

Primary Account: ██████6126        0

| Date | Description | |
|------|-------------|--:|
| | REF#  20211223B6B7261F00284812231027FT01 | |
| | FROM: MARXSMITH LLC                     ABA:  026009593 | |
| | BANK: | |
| | OBI:  GOODS REFERENCE CODE: QNCUSQTAN4Y | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 250,000.00 |
| | REF#  20211223B6B7261F00157312230801FT01 | |
| | FROM: ██████████           ABA:  021000021 | |
| | BANK: | |
| | OBI:  QCCUSGEFG | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 334,000.00 |
| | REF#  20211223B6B7261F00574112231508FT01 | |
| | FROM: YUMMY INC                         ABA:  211075086 | |
| | BANK: | |
| | OBI:  QCCUSYZX4, PINE GROVE CONSULTING,INC. | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 357,000.00 |
| | REF#  20211223B6B7261F00484612231338FT01 | |
| | BANK: M&T BANK | |
| | OBI:  REFERENCE CODE QCCUS9XF74Y, MUNDUZINCORPORATED | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 500,000.00 |
| | REF#  20211223B6B7261F00305612231049FT01 | |
| | FROM: DISTRIBUTED COMPUTING SYSTEMS      ABA:  026013576 | |
| | BANK: | |
| | OBI:  QCCUSGMMK | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 800,000.00 |
| | REF#  20211223B6B7261F00080012230719FT01 | |
| | FROM: CB INTERNATIONAL BANK LLC          ABA:  026013576 | |
| | BANK: | |
| | OBI:  QCCUS3E2T, CB INTERNATIONAL BANK LLC 420030048263 | |
| | OBI: | |

# *Signature* | SIGNATURE BANK

PRIVATE CLIENT GROUP 159
485 MADISON AVENUE
NEW YORK, NY 10022


PRIME TRUST LLC                          8-159
BAM CLEARING
330 S RAMPART BLVD SUITE 260
LAS VEGAS NV  89145

See Back for Important Information


Primary Account: ████6126          0

| Date | Description | |
|------|-------------|--:|
| | OBI: | |
| Dec 23 | INCOMING WIRE | 1,000,000.00 |
| | REF#  20211223B6B7261F00386012231158FT01 | |
| | FROM: DCG INTERNATIONAL INVESTMENTS LTD   ABA:  322286803 | |
| | BANK: | |
| | OBI:  REFERENCE: QCCUS3HRZQV, INFINITY VENTURES C1, L.P. 420 | |
| | OBI:  098750470 DCG INTERNATIONAL INVESTMENTS LTD. INVESTMEN | |
| | OBI:  T | |
| Dec 23 | INCOMING WIRE | 1,199,500.00 |
| | REF#  20211223B6B7261F00633012231607FT01 | |
| | FROM: LEGEND TRADING INC        ABA:  026013576 | |
| | BANK: | |
| | OBI:  QCCUSXWTC, BIRDIE CORPORATION 420069656697 | |
| | OBI: | |
| | OBI: | |
| Dec 23 | INCOMING WIRE | 1,298,000.00 |
| | REF#  20211223B6B7261F006633112231607FT01 | |
| | FROM: LEGEND TRADING INC        ABA:  026013576 | |
| | BANK: | |
| | OBI:  QCCUSXWTC, BIRDIE CORPORATION 420069656697 | |
| | OBI: | |
| | OBI: | |
| Dec 24 | INCOMING WIRE | 1.00 |
| | REF#  20211224B6B7261F00284912241307FT01 | |
| | FROM: CP CONSTRUCTION VENTURES LLC   ABA:  324377613 | |
| | BANK: | |
| | OBI:  QNCUS9QXJKZ | |
| | OBI: | |
| | OBI: | |
| Dec 24 | INCOMING WIRE | 1,000.00 |
| | REF#  20211224B6B7261F00134112240801FT01 | |
| | FROM: ████████████        ABA:  021000021 | |
| | BANK: | |
| | OBI:  USD WIRE | |
| | OBI: | |
| | OBI: | |
| Dec 24 | INCOMING WIRE | 1,000.00 |
| | REF#  20211224B6B7261F00134312240801FT01 | |
| | FROM: ████████████        ABA:  021000021 | |

# EXHIBIT 3

# SIGNATURE BANK

PRIVATE CLIENT GROUP 159
485 MADISON AVENUE
NEW YORK, NY 10022

PRIME TRUST LLC                        8-159
BAM CLEARING
330 S RAMPART BLVD SUITE 260
LAS VEGAS NV   89145

See Back for Important Information

Primary Account: ██████6126          0

| Date | Description | |
|------|-------------|--|
| | BANK: M&T BANK | |
| | OBI:  REFERENCE CODE QCCUS9XF74Y, MUNDUZINCORPORATED | |
| | OBI: | |
| | OBI: | |
| Dec 30 | INCOMING WIRE | 236,562.50 |
| | REF#  20211230B6B7261F00369212301046FT01 | |
| | FROM: MARXSMITH LLC          ABA:  026009593 | |
| | BANK: | |
| | OBI:  GOODS REFERENCE CODE: QNCUSQTAN4Y | |
| | OBI: | |
| | OBI: | |
| Dec 30 | INCOMING WIRE | 312,000.00 |
| | REF#  20211230B6B7261F00644012301445FT01 | |
| | FROM: YUMMY INC            ABA:  211075086 | |
| | BANK: | |
| | OBI:  QCCUSYZX4 PINE GROVE CONSULTING INC | |
| | OBI: | |
| | OBI: | |
| Dec 30 | INCOMING WIRE | 350,000.00 |
| | REF#  20211230B6B7261F00572312301350FT01 | |
| | FROM: PROGLOBIX LLC          ABA:  071000288 | |
| | BANK: | |
| | OBI:  QCCUSRV6P, PROGLOBIX LLC420084332167 | |
| | OBI: | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 1,918.00 |
| | REF#  20211231B6B7261F00225212310851FT01 | |
| | FROM: ECN OTC, LLC          ABA:  021000021 | |
| | BANK: | |
| | OBI:  QCCUSEH4VMF | |
| | OBI: | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 2,105.00 |
| | REF#  20211231B6B7261F00405212311237FT01 | |
| | FROM: PRIME TRUST LLC         ABA:  021000089 | |
| | BANK: | |
| Dec 31 | INCOMING WIRE | 2,500.00 |
| | REF#  20211231B6B7261F00462712311401FT01 | |
| | FROM: ██████████ OR ██████████     ABA:  021000021 | |

**Signature** | SIGNATURE BANK

PRIVATE CLIENT GROUP 159
485 MADISON AVENUE
NEW YORK, NY 10022

PRIME TRUST LLC                     8-159
BAM CLEARING
330 S RAMPART BLVD SUITE 260
LAS VEGAS NV   89145

See Back for Important Information

Primary Account: ██████6126          0

| Date | Description | |
|---|---|---|
| | BANK: | |
| | OBI:  QNCUSVPCE42 | |
| | OBI: | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 4,618.97 |
| | REF#  20211231B6B7261F00531512311618FT01 | |
| | FROM: ███████████          ABA:  121000248 | |
| | BANK: | |
| | OBI:  QNCUSX3VPN9 KXUW9MAJCMPS | |
| | OBI: | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 5,400.00 |
| | REF#  20211231B6B7261F00389512311214FT01 | |
| | FROM: COMMODORE MANAGEMENT LLC          ABA:  102000021 | |
| | BANK: | |
| | OBI:  REFERENCE: QCCUSAZ7HTHE COIN TRADING COMPANY, LLC42003 | |
| | OBI:  4051586 | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 10,000.00 |
| | REF#  20211231B6B7261F00503012311506FT01 | |
| | FROM: █████████          ABA:  121105156 | |
| | BANK: | |
| | OBI:  QCCUSAZ7H, THE COIN TRADING COMPANY420034051586 | |
| | OBI: | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 15,000.00 |
| | REF#  20211231B6B7261F00336412311113FT01 | |
| | FROM: █████████          ABA:  124003116 | |
| | BANK: | |
| | OBI:  QCCUSGEFG | |
| | OBI: | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 17,780.00 |
| | REF#  20211231B6B7261F00350612311129FT01 | |
| | FROM: ███████████          ABA:  062005690 | |
| | BANK: | |
| | OBI:  REFERENCEQCCUSJRVZ UNITED COIN INC420030696060 | |
| | OBI: | |
| | OBI: | |

# ~Signature~  | SIGNATURE BANK

PRIVATE CLIENT GROUP 159
485 MADISON AVENUE
NEW YORK, NY 10022

PRIME TRUST LLC                     8-159
BAM CLEARING
330 S RAMPART BLVD SUITE 260
LAS VEGAS NV  89145

See Back for Important Information

Primary Account: ██████6126          0

| Date | Description | |
|---|---|---:|
| Dec 31 | INCOMING WIRE | 20,802.00 |
| | REF#  20211231B6B7261F00332812311108FT01 | |
| | FROM:                              ABA:  021000089 | |
| | BANK: | |
| Dec 31 | INCOMING WIRE | 25,000.00 |
| | REF#  20211231B6B7261F00521512311552FT01 | |
| | FROM: ██████████            ABA:  121000248 | |
| | BANK: | |
| | OBI:  REFERENCE QCCUSZTF2 WESTCLIFFTECH | |
| | OBI: | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 26,000.00 |
| | REF#  20211231B6B7261F00526112311603FT01 | |
| | FROM: INOVASUPERSTAR LLC           ABA:  021000021 | |
| | BANK: | |
| | OBI:  QCCUSYZX4, PINE GROVE CONSULTING,INC. 420056235618 | |
| | OBI: | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 28,500.00 |
| | REF#  20211231B6B7261F00544312311655FT01 | |
| | FROM: JAMES BUTLER DBA BUTLER HOME MAINT ABA:  114000093 | |
| | BANK: | |
| | OBI:  QNCUSJDYNRP | |
| | OBI: | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 32,100.00 |
| | REF#  20211231B6B7261F00545812311700FT01 | |
| | FROM: TECC CONSULTING LLC           ABA:  121000248 | |
| | BANK: | |
| | OBI:  QCCUSZTF2-LOGISTIC FAST | |
| | OBI: | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 35,630.00 |
| | REF#  20211231B6B7261F00225912310854FT01 | |
| | FROM: ██████████            ABA:  043318092 | |
| | BANK: | |
| | OBI:  GEM PURCHASEREFERENCE CODE: QNCUSJ7GYQR | |
| | OBI: | |
| | OBI: | |

# SIGNATURE BANK

PRIVATE CLIENT GROUP 159
485 MADISON AVENUE
NEW YORK, NY 10022

PRIME TRUST LLC                          8-159
BAM CLEARING
330 S RAMPART BLVD SUITE 260
LAS VEGAS NV  89145

See Back for Important Information

Primary Account: ███████6126          0

| Date | Description | |
|------|-------------|--|
| Dec 31 | INCOMING WIRE | 70,000.00 |
| | REF#  20211231B6B7261F00437012311318FT01 | |
| | FROM: COIN TIME LLC                    ABA:  121000248 | |
| | BANK: | |
| | OBI:  REF QCCUSWHQFN7, STILLMAN DIGITAL LLC 420048617770 | |
| | OBI: | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 121,100.00 |
| | REF#  20211231B6B7261F00544812311655FT01 | |
| | FROM: EASTWEST BK-WIRE CLEARING DEPT   ABA:  322070381 | |
| | BANK: | |
| | OBI:  REV YOUR PD REF 3158304019 | |
| | OBI: | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 130,000.00 |
| | REF#  20211231B6B7261F00324512311058FT01 | |
| | FROM: ASPEN LAKE LLC/DBA COIN GENIE    ABA:  061110654 | |
| | BANK: THE COMMERCIAL BANK | |
| | OBI:  QCCUSWHQFN7, STILLMAN DIGITAL LLC420048617770 | |
| | OBI: | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 150,000.00 |
| | REF#  20211231B6B7261F00544912311656FT01 | |
| | FROM: EASTWEST BK-WIRE CLEARING DEPT   ABA:  322070381 | |
| | BANK: | |
| | OBI:  REV YOUR PD REF 2273120497 | |
| | OBI: | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 172,620.30 |
| | REF#  20211231B6B7261F00317612311048FT01 | |
| | FROM: INTERNATIONAL TRADING COMMERCE MAR  ABA:  066015084 | |
| | BANK: APOLLO BANK | |
| | OBI:   REFERENCE CODENQCCUS9XF74Y MUNDUZINTERNATIONAL | |
| | OBI: | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 236,562.50 |
| | REF#  20211231B6B7261F00258712310938FT01 | |
| | FROM: MARXSMITH LLC                    ABA:  026009593 | |
| | BANK: | |

# SIGNATURE BANK

Statement Period
From December 01, 2021
To    December 31, 2021
Page   176 of   426

PRIVATE CLIENT GROUP 159
485 MADISON AVENUE
NEW YORK, NY 10022

PRIME TRUST LLC                      8-159
BAM CLEARING
330 S RAMPART BLVD SUITE 260
LAS VEGAS NV  89145

See Back for Important Information

Primary Account: ███████6126          0

| Date | Description | |
|---|---|---|
| | OBI:  GOODS REFERENCE CODE: QNCUSQTAN4Y | |
| | OBI: | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 300,000.00 |
| | REF#  20211231B6B7261F00271812310952FT01 | |
| | FROM: 1/███████████      ABA:  NFSCUS3B | |
| | BANK: NATIONAL FINANCIAL SERVICES LLC | |
| Dec 31 | INCOMING WIRE | 600,000.00 |
| | REF#  20211231B6B7261F00434912311317FT01 | |
| | FROM: EMBLAZE ONE INC.      ABA:  021000021 | |
| | BANK: | |
| | OBI:  REFERENCE NO. QCCUSGMMK | |
| | OBI: | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 3,000,000.00 |
| | REF#  20211231B6B7261F00348512311127FT01 | |
| | FROM: COMPASS MINING INC      ABA:  026013576 | |
| | BANK: | |
| | OBI:  QCCUSGMMK | |
| | OBI: | |
| | OBI: | |
| Dec 31 | INCOMING WIRE | 3,450,000.00 |
| | REF#  20211231B6B7261F00099312310800FT01 | |
| | FROM: PRIME TRUST LLC      ABA:  021000021 | |
| | BANK: | |
| Dec 31 | INCOMING WIRE | 6,500,000.00 |
| | REF#  20211231B6B7261F00096112310751FT01 | |
| | FROM: YUCHEN SUN      ABA:  026013576 | |
| | BANK: | |
| | OBI:  CREDIT TO: PRIME TRUST, LLC REFERENCE: QCCUSW47D, POLO | |
| | OBI:   DIGITAL ASSETS, INC. 420062543280 PURPOSE: FUNDING | |
| | OBI: | |

Withdrawals and Other Debits

| Dec 01 | OUTGOING WIRE | 5.00 |
|---|---|---|
| | REF#  20211201B6B7261F005566 | |
| | TO:   1/███████████      ABA:  021000021 | |
| | BANK: JPMORGAN CHASE BANK, NA      ACCT# GB40REVO009970 | |
| | OBI:  20211124B6B7261F00196511240801FT03 | |

# EXHIBIT 4

| cash_transactions.settled_date | organization.label | account.name | account.number | cash_transactions.funds_transfer_type | cash_transactions.amount | incoming_or_outgoing | cash_transactions.currency_type | funds_transfers.settlement_details | cash_transactions.comments_1 | activities.user_email | activities.user_name |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/24/2023 | Yuchen Sun | Yuchen Sun | 1604 | wire | (897,428.19) | Outgoing | USD | BMO 3077 - 05/24/2023 | Settled automatically via wire 9FCE. | chichan.che@tron.network | Chi Chan Che |
| 6/15/2023 | Yuchen Sun | Prime Trust Escrow FBO1H:345 | 2344 | wire | (1,186,475.27) | Outgoing | USD | | Per signed Disbursement Authorization from customer dated | | |
| 5/17/2023 | Yuchen Sun | Polo Digital Assets, Ltd. | 3280 | wire | (6,000,000.21) | Outgoing | USD | BMO 3077 - 05/17/2023 | Settled automatically via wire 5121. | chichan.che@tron.network | Chi Chan Che |
| 5/24/2023 | Yuchen Sun | Yuchen Sun | 1604 | wire_international | (500,000.00) | Outgoing | USD | BMO 3077 - 05/24/2023 | Settled automatically via wire D3CC. | chichan.che@tron.network | Chi Chan Che |
| 5/24/2023 | Yuchen Sun | Yuchen Sun | 1604 | wire_international | (500,000.00) | Outgoing | USD | BMO 3077 - 05/24/2023 | Settled automatically via wire 481C. | chichan.che@tron.network | Chi Chan Che |