## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| PRIME CORE TECHNOLOGIES INC., *et al.*, | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |
| PCT LITIGATION TRUST, | |
| Plaintiff, | |
| v. | Adv. No. 25-51975 (JKS) |
| YUCHEN "JUSTIN" SUN and POLO DIGITAL ASSETS LTD, | |
| Defendants. | |

## YUCHEN "JUSTIN" SUN'S OPENING BRIEF
## IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT

MORRIS JAMES LLP
Eric J. Monzo (DE Bar No. 5214)
Christopher M. Donnelly (DE Bar No. 7149)
3205 Avenue North Boulevard, Suite 100
Wilmington, Delaware 19803
Tel.: (302) 888-6800
Fax: (302) 571-1750
Email: emonzo@morrisjames.com
        cdonnelly@morrisjames.com

and

LOEB & LOEB LLP
Bethany D. Simmons (*pro hac vice* forthcoming)
Noah Weingarten (*pro hac vice* forthcoming)
345 Park Avenue
New York, New York 10154
Tel.: (212) 407-4000
Fax: (212) 407-4990
Email: bsimmons@loeb.com
        nweingarten@loeb.com

*Counsel to Defendant Yuchen "Justin" Sun*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT......................................................................................... 1

JURISDICTION AND VENUE ....................................................................................... 2

BANKRUPTCY RULE 7012(b), LOCAL RULES 7012-1 AND 9013-1(f) STATEMENT......... 2

BACKGROUND ............................................................................................................. 2

    A.    The Parties. .................................................................................................. 2

    B.    Prime Trust unilaterally terminates its relationship with Sun following the commencement of the SEC Action. ......................................................... 3

    C.    The Transfers were made from the x3077 Account, which held commingled assets from different Debtors that did not owe a debt to Sun........................................... 3

    D.    There is no way to determine if the Transfer funds were from Prime Trust or the other Debtors........................................................................... 6

    E.    Procedural posture of the Chapter 11 Case and this adversary proceeding. ........... 7

ARGUMENT ................................................................................................................... 8

    I.    The Complaint should be dismissed for lack of personal jurisdiction over Sun under Federal Rule 12(b)(2)..................................................................... 8

        A.    The Court lacks personal jurisdiction because exercising jurisdiction is not consistent with the United States Constitution. ......................................... 9

            i.    Sun does not have minimum contacts with the United States. ..... 10

            ii.    This adversary proceeding arises from the Transfers, not from Sun's contacts with the United States. ......................................... 12

            iii.    Exercising jurisdiction would not comport with fair play or substantial justice when the Complaint alleges that the Debtors compelled the transfer of funds to Sun. ......................................... 13

    II.    The Complaint should also be dismissed for failure to state a claim under Federal Rule 12(b)(6)................................................................................ 14

        A.    The Complaint does not allege the antecedent debt owed to Sun............ 15

        B.    The Complaint does not – and cannot – plausibly allege that Prime Trust paid Sun on account of an antecedent debt. .............................................. 16

CONCLUSION ............................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................14

*Astropower Liquidating Trust v. Xantrex Tech., Inc. (In re Astropower
   Liquidating Trust)*,
   No. 05-50867,
   2006 Bankr. LEXIS 2443 (Bankr. D. Del. Oct. 2, 2006).......................................1, 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................14, 17

*Budget Blinds, Inc. v. White*,
   536 F.3d 244 (3d Cir. 2008)......................................................................11, 12

*Burtch v. Huston (In re USDigital, Inc.)*,
   443 B.R. 22 (Bankr. D. Del. 2011) ...................................................................16

*Corigliano v. Classic Motor, Inc.*,
   611 F. App'x 77 (3d Cir. 2015) ....................................................................9, 12

*Day v. EzriCare, LLC*,
   No. 24-01107 (GC) (RLS),
   2024 U.S. Dist. LEXIS 220173 (D.N.J. Dec. 4, 2024) ..........................................11, 12

*Hanson v. Denckla*,
   357 U.S. 235 (1958)..................................................................................10

*Hasson v. FullStory, Inc.*,
   114 F.4th 181 (3d Cir. 2024) .......................................................................9, 12

*Helicopteros Nacionales De Colombia v. Hall*,
   466 U.S. 408 (1984)............................................................................10, 11, 13

*IMO Indus. v. Kiekert AG*,
   155 F.3d 254 (3d Cir. 1998)..........................................................................13

*Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC)*,
   Adv. No. 17-50716,
   2019 Bankr. LEXIS 2817 (Bankr. D. Del. Sept. 6, 2019) .........................................14

*Keston v. FirstCollect, Inc.*,
   523 F. Supp. 2d 1348 (S.D. Fla. 2007) ..............................................................12

*Miller v. Easy Star Records (In re DA Liquidating Corp.)*,
   622 B.R. 172 (Bankr. D. Del. 2020) ....................................................15

*Miller v. SWZ Fin., II LLC (In re United Tax Grp., LLC)*,
   Adv. No. 15-50880,
   2021 Bankr. LEXIS 3682 (Bankr. D. Del. Nov. 8, 2021) ....................................16

*Pellegrino v. A&P*,
   No. 2:13-559 (WJM),
   2013 U.S. Dist. LEXIS 152819 (D.N.J. Oct. 22, 2013)........................................14

*Pereira v. Urthbox, LLC (In re Try The World, Inc.)*,
   No. 20-01013-jlg,
   2021 Bankr. LEXIS 2140 (Bankr. S.D.N.Y. Aug. 9, 2021) .................................12

*In re Prime Core Techs.*,
   673 B.R. 148 (Bankr. D. Del. 2025) ....................................................4, 5

*Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*,
   675 F.2d 587 (3d Cir. 1982)............................................................10, 11

*Robinson v. Fam. Dollar*,
   679 F. App'x 126 (3d Cir. 2017) ........................................................14

*Stanziale v. Brown-Minneapolis Tank ULC, LLC (In re BMT-NW Acquisition, LLC)*,
   582 B.R. 846 (Bankr. D. Del. 2018) ....................................................15

*Stranahan Gear Co. v. NL Indus.*,
   800 F.2d 53 (3d Cir. 1986)............................................................10

*THQ Inc. v. Starcom Worldwide, Inc. (In re THQ Inc.)*,
   Adv. No. 14-51079 (MFW),
   2016 Bankr. LEXIS 1774 (Bankr. D. Del. Apr. 18, 2016) ...................................15

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*,
   735 F.2d 61 (3d Cir. 1984)............................................................9

*Tracinda Corp. v. DaimlerChrysler AG*,
   364 F. Supp. 2d 362 (D. Del. 2005)....................................................8

*Walden v. Fiore*,
   571 U.S. 277 (2014)..................................................................10, 13

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980)..................................................................13

**Statutes**

11 U.S.C. § 547 ...................................................................................................................1, 16

28 U.S.C. § 157 .........................................................................................................................2

28 U.S.C. § 1334 .......................................................................................................................2

28 U.S.C. § 1408 .......................................................................................................................2

28 U.S.C. § 1409 .......................................................................................................................2

**Court Rules**

Fed. R. Bankr. P. 7004 ..........................................................................................................2, 9

Fed. R. Bankr. P. 7012 ....................................................................................................2, 8, 14

Fed. R. Civ. P. 4 ...................................................................................................................2, 8

Fed. R. Civ. P. 12 ..........................................................................................................2, 8, 14

Yuchen "Justin" Sun ("Sun") respectfully submits this opening brief in support of his motion (this "Motion") to dismiss the *Complaint* [Adv. D.I. 1] (the "Complaint" or "Compl.") of Plaintiff PCT Litigation Trust (the "Trust" or "Plaintiff"). In support of the Motion, Sun submits the Declaration of Justin Sun dated January 19, 2026 (the "Sun Decl.") and respectfully states as follows:

## PRELIMINARY STATEMENT

Sun is an innocent party, and this bankruptcy was entirely precipitated by the Debtors' gross mismanagement of customer funds—funds that were paid to and commingled among all of the Debtor entities. This pervasive malfeasance not only caused the Debtors' insolvency, but it now prevents the Plaintiff from establishing its *prima facie* case. The Complaint cannot plausibly plead that Prime Trust assets—as opposed to the assets of other Debtors—were used to pay any alleged antecedent debt owed to Sun. Payment of an antecedent debt by the debtor is a basic and indispensable element of a preference claim under section 547 of the Bankruptcy Code. Here, the Debtors obtained a favorable ruling confirming their assets were hopelessly commingled. Plaintiff must now accept the consequence of that ruling: the Trust cannot show which specific Debtor's funds paid which specific debt. Stated differently, because of the pervasive commingling of funds, the Trust cannot demonstrate that Prime Trust funds were used to satisfy any obligation to Sun, and as a result, cannot establish a preference claim as a matter of law.

Beyond this serious and incurable pleading defect, the Complaint suffers from an additional fatal flaw. This Court lacks personal jurisdiction over Sun. Exercising jurisdiction over Sun—a Hong Kong resident with no purposeful contacts with the United States—would be wholly inconsistent with constitutional due process. The Complaint's jurisdictional theory rests entirely on the unilateral actions of the Debtors and other parties, not on conduct by Sun directed toward the United States. Under well-settled law, such unilateral acts cannot create personal jurisdiction,

nor would it comport with "fair play or substantial justice" to hale Sun into court when the Complaint itself alleges that the Debtors compelled the transfer of funds and there are no allegations that Sun knew the funds would originate from the United States.

In sum, Plaintiff cannot establish either personal jurisdiction over Sun or that the alleged transfers were made on account of an antecedent debt owed by Prime Trust. For these reasons, and because the Complaint is incurably deficient, it should be dismissed in its entirety and with prejudice.

### JURISDICTION AND VENUE

The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The legal predicates for the relief requested herein are Rules 4 and 12 of the Federal Rules of Civil Procedure (the "Federal Rules") and Rules 7004 and 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### BANKRUPTCY RULE 7012(b), LOCAL RULES 7012-1 AND 9013-1(f) STATEMENT

Pursuant to Bankruptcy Rule 7012(b) and Local Rules 7012-1 and 9013-1(f), Sun states that he does not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### BACKGROUND

**A.      The Parties.**

The above-captioned debtors (the "Debtors") are comprised of Prime Trust, LLC ("Prime Trust"), Prime Core Technologies Inc. ("Prime Core"), Prime Digital, LLC ("Prime Digital"), and Prime IRA LLC ("Prime IRA").

Defendant Sun is a "prominent crypto entrepreneur". Compl. at ¶ 28. Sun is the founder of TRON, "one of the most popular blockchain ecosystems in the world." *Id.* at ¶ 53. Sun and debtor Prime Trust are parties to that certain *Self-Directed Custodial Account Agreement* effective as of October 1, 2019 (the "Custody Agreement"). *Id.* at ¶¶ 5, 56.

Plaintiff was established to litigate the "Vested Causes of Action" as defined in the *Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and its Affiliated Debtors* [D.I. 592-1] (as amended, supplemented, or otherwise modified, the "Plan"), which were transferred and assigned to the Trust. Compl. at ¶ 27.

**B.      Prime Trust unilaterally terminates its relationship with Sun following the commencement of the SEC Action.**

Pursuant to the Custody Agreement, Prime Trust was to be the custodian of certain of Sun's assets. *See* Custody Agreement at §§ 2(a) and 4(b). The Complaint never alleges what assets Prime Trust held in custody for Sun. On March 22, 2023, the United States Securities and Exchange Commission ("SEC") commenced a civil lawsuit against Sun in the United States District Court for the Southern District of New York captioned *Securities and Exchange Commission v. Sun et al.*, No. 23-cv-0243 (the "SEC Action"). *See* Compl. at ¶ 73.

"In response to the SEC's action against Sun," Prime Trust "made the decision to terminate its relationship" with Sun and other entities alleged to be owned or controlled by Sun. *Id.* at ¶¶ 74-75. Subsequently, the Debtors made the Transfers (defined below) to Sun, which were made "[as] a result of Prime [Trust] terminating the relationship due to the regulatory action and allegations against Sun." *Id.* at ¶ 76.

**C.      The Transfers were made from the x3077 Account, which held commingled assets from different Debtors that did not owe a debt to Sun.**

Following Prime Trust's termination of its relationship with Sun, the Debtors made a series of transfers aggregating $9,083,903.77 USD in fiat currency (collectively, the "Transfers") from a

3

bank account at BMO Harris Bank, N.A. ending in 3077 (the "x3077 Account") to or for the benefit of Sun.  *Id.* at ¶ 77.  The Debtors have no way of determining what funds in the x3077 Account belonged to Prime Trust as opposed to the other Debtor entities (that did not owe an antecedent debt to Sun).  The reason is simple: The x3077 Account was used by – and transferred funds for – *each* of the Debtors including Prime Trust and the funds of each Debtor were hopelessly commingled.

Each of the Debtors utilized the x3077 Account.  The Trust has alleged in the Complaint that the x3077 Account was "one of Prime's [which is defined as each of the Debtors] omnibus, commingled accounts."  *Id.* at ¶ 77.  The Debtors also stated that "***[t]he operations of the Debtor entities are interrelated***," and while ***"[a]ll corporate bank accounts are legally held by Prime Trust, . . . the Company [defined as all of the Debtors] uses these accounts to pay the expenses of each of the Debtor entities***."  *Declaration of Jor Law, Interim Chief Executive Officer and President of Prime Core Technologies Inc., et al., in Support of Chapter 11 Petitions and First Day Motions* [D.I. 14] (the "First Day Declaration") at ¶ 14 (emphasis added).  All of the Debtors – *i.e.*, more than Prime Trust – utilized the x3077 Account because "***Prime Core and Prime Trust maintain a centralized cash repository and cash management system***."  *Id.* (emphasis added).  That is because "[t]hird parties may make contributions directly to Prime Trust, with Prime Core contributing additional capital to Prime Trust on a go-forward, as-needed basis."  *Id.*  In particular, the Debtors "raise[d] capital at the Prime Core level" and "Prime Core then contribute[d] funds to Prime Trust for operational purposes", pursuant to an Intracompany Contribution Agreement, dated March 7, 2022.  *Id.*

The Court has already determined that "the Debtors hopelessly commingled Currency [including fiat currency] such that the Currency is not traceable."  *In re Prime Core Techs.*, 673

B.R. 148, 152 (Bankr. D. Del. 2025) (granting the *Plan Administrator's Motion for Entry of an Order (I) Approving the Plan Administrator's Determination that the Debtors' Assets Are Property of the Bankruptcy Estates; (II) Approving Distributions of Estate Property; (III) Establishing Procedures for Setting a Disputed Claims Reserve; and (IV) Granting Related Relief* [D.I. 919] (the "Distribution Motion")); *accord id.* at 166-67 ("The overwhelming evidence establishes that the Debtors hopelessly commingled assets.").  The Debtors themselves have stated that they cannot trace what funds belonged to Prime Trust versus the other Debtor entities that did not owe a debt to Sun.  *See* Distribution Motion at ¶ 21 ("*[I]t is virtually impossible to identify or distinguish the assets that Prime's [defined as all the Debtors] customers transferred to Prime from assets provided to Prime by other customers or from assets generated from Prime's own business operations*.")

The Debtors explained why the funds – including those in the x3077 Account – are commingled: "Prime [again, defined as all of the Debtors] regularly made transfers [of their fiat currency] between [their] different commingled bank accounts, further commingling Prime's funds generated from its own business operations and what were originally funds transferred to Prime by customers."  *Id.* at ¶ 16.  The Debtors further commingled funds by transferring x3077 Account funds to and from the Debtors' other bank accounts and "Prime [again, defined as all of the Debtors] *instructed its banks to move funds between different accounts, regardless of the source of the funds, on an as-needed basis to satisfy different wire and ACH transfer obligations*."  *Id.* at ¶ 17 (emphasis added).  "*There also were some instances where Prime transferred funds between the bank accounts that held commingled funds transferred to Prime from its customers and Prime's own corporate accounts*."  *Id.* at ¶ 18 (emphasis added).

5

The "only way" that the Debtors attempted to track their commingled assets was "by noting the amounts on internal, omnibus ledgers." *Id.* at ¶ 19. However, those ledgers were "errantly and later intentionally corrupted." *Id.* Among other things, "key executives of Prime have admitted that Prime intentionally falsified internal records" and the Debtors "maintained substandard reconciliation processes throughout its history, including with respect to its [ledger]." *Id.* at ¶ 22. "Moreover, even when Prime had attempted to keep proper records [and] segregate assets . . . [they were] unable to do so." *Id.*

**D.     There is no way to determine if the Transfer funds were from Prime Trust or the other Debtors.**

During the 90 day period immediately preceding the Petition Date (the "Preference Period"), Prime Trust debts must have been paid from assets outside of Prime Trust because Prime Trust did not have enough funds to fund all of the disbursements made during the Preference Period. Accordingly, a source outside of Prime Trust paid Prime Trust debts. Yet, the Complaint fails to allege – because it is impossible under the circumstances – to identify whether specific funds (such as the funds owed to Sun) were paid from Prime Trust funds or from funds belonging to other sources. The reason is clear: the Debtors' assets are hopelessly commingled.

Prime Trust's schedules (the "Schedules") and statement of financial affairs (the "SOFAs") (Case No. 23-11162, D.I. 8) show that Prime Trust did not have enough money to fund all of the disbursements that it made during the Preference Period as summarized in the table below.

| 90 Day Window Disbursements | $870,381,595.77 |
|---|---|
| Cash On Hand Plus Revenue | $134,511,705.98 |
| Amount of Funds that Prime Trust Disbursed Above and Beyond What it Had and/or Earned | $735,869,889.79 |

The table above shows that Prime Trust made $870 million of fiat currency disbursements during the Preference Period. *See id.* at pp. 1604-1843/2651. Yet, at most, Prime Trust only had

6

$134,511,705.98 cash-on-hand as of the Petition Date *plus* revenues in the two-and-a-half years leading up to the Petition Date.  And thus, there was a gap of $736 million that was contributed to fund these disbursements.

The $134,511,705.98 is comprised of $20,093,723.00 cash-on-hand (*id.* at p. 1535/2651) plus $114,417,983.02 in revenues from business and non-business sources (*id.* at p. 535/2651), as summarized below:

| Time Period | Gross revenue from business | Non-business revenue |
|---|---|---|
| 1/1/2023 to Petition Date | $10,192,652.44 | $5,355,389.06 |
| 1/1/2022 to 12/31/2022 | $33,608,550.52 | $6,648,017.00 |
| 1/1/2021 to 12/31/2021 | $57,436,617.00 | $1,176,757.00 |
| **Subtotal** | **$101,237,819.96** | **$13,180,163.06** |

The Complaint fails to allege which debts the $134 million of Prime Trust funds (versus the $735 million in funds from other sources) were used for any specific transfer, such as the Transfers to Sun.  In other words, the Complaint fails to show that Prime Trust funds were used to pay the alleged antecedent debt owed to Sun.

**E.      Procedural posture of the Chapter 11 Case and this adversary proceeding.**

On August 14, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, which are being jointly administered (the "Chapter 11 Case").

On December 21, 2023, this Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Amended Chapter 11 Plan of Reorganization of Prime Core Technologies Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 644], which confirmed the *Amended Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and its Affiliated Debtors* [D.I. 644] (the "Plan").  The Plan provides that it is "a joint chapter 11 plan for each of the Debtors,

7

with the Plan for each Debtor being non-severable and mutually dependent on the Plan for each other Debtor."  Plan at § 6.1.  The Plan further provides that the joint plan "does not provide for substantive consolidation of the Debtors' Estates" and "the Debtors' Estates shall not be deemed to be substantively consolidated for purposes hereof."  *Id*.  The Plan further makes clear that "[none] of the Debtors is subject to or liable for any claim against any other Debtor."  *Id.*

On August 12, 2025, the Trust commenced this adversary proceeding.  [Adv. D.I. 1].  On November 13, 2025, the Trust filed the *Motion of Plaintiff PCT Litigation Trust for Entry of Order Authorizing Alternative Means of Service on Defendants Yuchen "Justin" Sun and Polo Digital Assets Ltd Pursuant to Federal Rules of Civil Procedure 4(f)(3) and 4(h)(2)*.  *See* Adv. D.I. 6 (the "Service Motion").  On December 5, 2025, this Court entered the *Order Authorizing Alternative Means of Service on Defendants Yuchen "Justin" Sun and Polo Digital Assets Ltd Pursuant to Federal Rules of Civil Procedure 4(f)(3) and 4(h)(2)*.  *See* Adv. D.I. 9 (the "Service Order").

## ARGUMENT

**I.      The Complaint should be dismissed for lack of personal jurisdiction over Sun under Federal Rule 12(b)(2).**

Federal Rule 12(b)(2), made applicable by Bankruptcy Rule 7012(b), provides for dismissal of a complaint for "lack of personal jurisdiction."  Fed. R. Civ. P. 12(b)(2).  "As the Supreme Court has cautioned, 'great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.'"  *Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362, 391 (D. Del. 2005) (dismissing complaint for lack of personal jurisdiction) (quoting *Asahi Metal Indus. Co. v. Superior Court. of Cal.,* 480 U.S. 102, 115 (1987)).  This Court lacks personal jurisdiction over Sun for several and independent reasons.

**A.**     **The Court lacks personal jurisdiction because exercising jurisdiction is not consistent with the United States Constitution.**

Bankruptcy Rule 7004(f) provides that "serving a summons . . . establishes personal jurisdiction over a defendant" only if "exercising jurisdiction is consistent with the United States Constitution and laws."  To establish specific jurisdiction, consistent with the Constitution, a plaintiff must show (1) "the defendant has 'minimum contacts' with the forum such that it 'purposefully avail[ed] itself of the privilege of conducting activities within the forum' and 'invoke[ed] the benefits and protections of [the forum's] laws;" (2) "the plaintiff's claims must 'arise out of or relate to' at least some of those contacts;" and (3) "the exercise of jurisdiction over the defendant must 'comport[] with traditional notions of fair play and substantial justice' such that the defendant should reasonably anticipate being haled into court in that forum."  *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (affirming dismissal for lack of personal jurisdiction) (citations omitted); *accord Corigliano v. Classic Motor, Inc.*, 611 F. App'x 77, 79-80 (3d Cir. 2015) (applying same factors for assessing personal jurisdiction).

"In bankruptcy cases the forum is the United States in general, not the particular forum state." *Astropower Liquidating Trust v. Xantrex Tech., Inc. (In re Astropower Liquidating Trust)*, No. 05-50867, 2006 Bankr. LEXIS 2443, at *3-4 (Bankr. D. Del. Oct. 2, 2006) (dismissing adversary proceeding for lack of personal jurisdiction).

"Once a jurisdictional defense has been properly raised, the plaintiff bears the burden of demonstrating contacts with the forum state sufficient to give the court in personam jurisdiction." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984) (citation omitted); *accord Astropower Liquidating Trust*, 2006 Bankr. LEXIS 2443, at *3-4.  In meeting its burden, "plaintiff must respond with actual proofs, not mere allegations." *Time Share Vacation*

9

*Club*, 735 F.2d at 66 n.9; *accord Stranahan Gear Co. v. NL Indus.*, 800 F.2d 53, 58 (3d Cir. 1986) ("The bare allegation in the . . . complaint . . . is not sufficient to meet this evidentiary burden").

The Trust cannot satisfy a single factor and, therefore, the Court lacks personal jurisdiction over Sun.

### i.    *Sun does not have minimum contacts with the United States.*

The minimum contacts test "focuses on the relationship among the defendant, the forum, and the litigation," a relationship that "must arise out of contacts that the defendant himself creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotations omitted). The Complaint fails to allege the necessary minimum contacts to establish personal jurisdiction for at least two reasons.

***First***, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 417 (1984) ("[the] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"); *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982) (affirming dismissal for lack of personal jurisdiction and holding that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.").

The entire basis for the Complaint's assertion of personal jurisdiction over Sun is the unilateral actions of the Debtors, which involved Prime Trust terminating its relationship with Sun and causing the Transfers. The Complaint specifically alleges that following the commencement of the SEC Action, "[t]he subsequent Transfers to Defendants" were "***a result of Prime terminating the relationship due to the regulatory action and allegations against Sun***."

10

(emphasis added).   Thus, the Complaint alleges that the Debtors *unilaterally* fired Sun and *unilaterally* mandated the Transfers made to Sun.   But the Debtors' *unilateral* conduct does not establish Sun's contact with the forum state.

To avoid the unilateral action of the Debtors being the cause of the Transfers, the Complaint alleges that "Chi Chan Che, using the email address chichan.che@tron.network, directed the Transfers for or on behalf of Sun and Polo."   Compl. at ¶ 78.   This allegation does not help the Debtors because the Debtors are relying on additional "unilateral activit[ies] of another party or a third person" – Chi Chan Che – to establish personal jurisdiction over Sun.   *Helicopteros Nacionales De Colombia*, 466 U.S. at 417; *Reliance Steel Prods. Co.*, 675 F.2d at 589 ("[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.").   The Complaint pleads no facts as to Chi Chan Che or Sun's knowledge of his actions.   The Complaint simply relies on more actions of a third-party to establish personal jurisdiction over Sun, which is insufficient and improper to establish personal jurisdiction over Sun.

**Second**, the acceptance of payment from a bank in the forum state does not itself constitute purposeful availment to that forum state if the beneficiary did not initiate the transaction.   *See, e.g.*, *Helicopteros Nacionales De Colombia*, 466 U.S. at, 416-17 ("[Foreign defendant]'s acceptance . . . of checks drawn on a Texas bank is of negligible significance for purposes of determining whether [defendant] had sufficient contacts in Texas."); *Budget Blinds, Inc. v. White*, 536 F.3d 244, 262 (3d Cir. 2008) (rejecting plaintiff's argument that "the Defendants established minimum contacts by accepting [the plaintiff]'s settlement payment which was wired from a California bank to defendants.") (citation omitted); *Day v. EzriCare, LLC*, No. 24-01107 (GC) (RLS), 2024 U.S. Dist. LEXIS 220173, at *11 (D.N.J. Dec. 4, 2024) (a party's "unilateral payments . . . to [defendant]

cannot alone establish personal jurisdiction over [defendant]"); *Keston v. FirstCollect, Inc.*, 523 F. Supp. 2d 1348, 1355 n.6 (S.D. Fla. 2007) ("Unilateral transfer of funds to a different jurisdiction cannot create personal jurisdiction where it is otherwise lacking.").

Sun's mere receipt of funds, which the Debtors forced on him by virtue of their termination of the client relationship, cannot establish personal jurisdiction. *Budget Blinds Inc.*, 536 F.3d at 262; *Day*, 2024 U.S. Dist. LEXIS 220173, at *11; *Keston*, 523 F. Supp. 2d at 1355 n.6. Simply accepting the Transfers does not establish jurisdiction over Sun.

> **ii.** **This adversary proceeding arises from the Transfers, not from Sun's contacts with the United States.**

To maintain specific jurisdiction over a defendant, "the plaintiff's claims must 'arise out of or relate to' at least some of [the defendant's] contacts." *Hasson*, 114 F.4th at 186; *Corigliano*, 611 F. App'x at 79-80. This adversary proceeding does not arise out of any contacts that Sun had with the United States. The only contact that the Complaint alleges that Sun had with the United States is the alleged execution of the Custody Agreement. However, this adversary proceeding does not arise from that agreement. It arises from the Transfers. The two have nothing to do with each other – and are completely distinct from one another – in the context of a preference claim.

The preference claim was not "extant, not capable of being brought by [Prime Trust] at the time of the signing of the" Custody Agreement and therefore does not "relate" to the Custody Agreement. *Pereira v. Urthbox, LLC (In re Try The World, Inc.)*, No. 20-01013-jlg, 2021 Bankr. LEXIS 2140, *33 (Bankr. S.D.N.Y. Aug. 9, 2021) (holding that fraudulent transfer claims were not arbitrable because they did not "relate" to the APA at issue since they were not capable of being brought by the debtor at the time the APA was signed). This is made clear by the fact that the Trust would have an avoidance action regardless of the Custody Agreement's existence. The Trust does not bring a claim based on the terms of the Custody Agreement. Sun cannot defend this preference

action by contract-based defenses or seek to enforce the arbitration clause in the Custody Agreement, which further highlights that the preference claim does not arise from the Custody Agreement.  It simply arises from the Transfers.  However, as discussed above, the Complaint fails to plead minimum contacts in connection with the Transfers.

### iii. Exercising jurisdiction would not comport with fair play or substantial justice when the Complaint alleges that the Debtors compelled the transfer of funds to Sun.

Personal jurisdiction is proper only if a defendant could foresee being "haled into court" based on its conduct in the forum.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 260 n.3 (3d Cir. 1998) (affirming dismissal for lack of personal jurisdiction because, *inter alia*, "[t]here is . . . an aspect of foreseeability that we believe is missing in this case.").

Here, it was not reasonably foreseeable that Sun would be haled into court based on his receipt of the Transfers when the Complaint itself alleges that the Debtors compelled the Transfers. *See Walden*, 571 U.S. at 285 ("it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him").  Indeed, in *Walden*, the Supreme Court expressly found that the Court of Appeals erred by "allow[ing] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis" and "improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis."  *Id.* at 289.  The Complaint alleges that the Debtors' manufactured the basis of this preference lawsuit by compelling the Transfers to occur.  It is not reasonably foreseeable to be haled into court when a lawsuit is based on the plaintiff's very own conduct.

Moreover, the receipt of the Transfers does not make it reasonably foreseeable that Sun would be haled into court in the United States.  In *Helicopteros*, the Supreme Court found that the "[foreign defendant]'s acceptance . . . of checks drawn on a Texas bank is of negligible significance

13

for purposes of determining whether [defendant] had sufficient contacts in Texas. There is no indication that Helicol ever requested that the checks be drawn on a Texas bank or that there was any negotiation . . .with respect to the location or identity of the bank on which checks would be drawn". That is exactly the case here. There is no indication that Sun requested or knew that the Transfers would come from a bank in the United States. Sun Decl. at ¶ 6. Nor was any part of the negotiations concerning the Custody Agreement in the United States. *Id.* at ¶ 8. Nor was the Custody Agreement executed in the United States. *Id.* at ¶ 9. In short, it was not foreseeable for Sun to be sued in the United States given Sun's lack of knowledge concerning the Transfers. The Complaint should be dismissed for lack of personal jurisdiction over Sun.

## II. The Complaint should also be dismissed for failure to state a claim under Federal Rule 12(b)(6).

Federal Rule 12(b)(6), made applicable by Bankruptcy Rule 7012, provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Robinson v. Family Dollar, Inc.*, 679 F. App'x 126, 131-32 (3d Cir. 2017). Under Section 547(g), the Trustee bears the burden of "proving the avoidability of a transfer under subsection (b) of this section," including by pleading that the Transfers were on account of an antecedent debt owed to Sun.

In considering this portion of Sun's motion to dismiss, the Court may take judicial notice of filings made in this bankruptcy case. *See Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC)*, Adv. No. 17-50716, 2019 Bankr. LEXIS 2817, at *39 (Bankr. D. Del. Sept. 6, 2019); *Pellegrino v. A&P*, No. 2:13-559 (WJM), 2013 U.S. Dist. LEXIS 152819, at *3-4 (D.N.J. Oct. 22, 2013) ("[T]he

court will take judicial notice of A&P's Bankruptcy Plan without converting the motion to dismiss to one for summary judgment, as this is a matter of public record.").

### A.    The Complaint does not allege the antecedent debt owed to Sun.

"To survive a motion to dismiss, Trustee must sufficiently plead all elements of a preference, including an antecedent debt." *Miller v. Easy Star Records (In re DA Liquidating Corp.)*, 622 B.R. 172, 176-77 (Bankr. D. Del. 2020) (dismissing preference action); *accord Stanziale v. Brown-Minneapolis Tank ULC, LLC (In re BMT-NW Acquisition, LLC)*, 582 B.R. 846, 860-61 (Bankr. D. Del. 2018) (same).

Courts regularly dismiss preference complaints when they involve threadbare allegations that there was antecedent debt. *See, e.g.*, *In re BMT-NW Acquisition, LLC*, 582 B.R. at 861 ("The Trustee fails to show an antecedent debt which the Debtor incurred from these Defendants on a date prior to the transfers"); *THQ Inc. v. Starcom Worldwide, Inc. (In re THQ Inc.)*, Adv. No. No. 14-51079 (MFW), 2016 Bankr. LEXIS 1774, at *11 (Bankr. D. Del. Apr. 18, 2016) (complaint's allegations concerning the nature of the antecedent debt is "not sufficient to survive a motion to dismiss").

Here, the Complaint is devoid of any allegations about the antecedent debt owed to Sun. The Complaint merely makes the threadbare, formulaic allegation that "[e]ach of the Transfers was made for or on account of an antecedent debt owed by Prime," Compl. at ¶ 167, and "[i]f not avoided, the Transfers would enable Defendants to receive more than Defendants would have received on account of their claim in a hypothetical liquidation under chapter 7 had Prime not made the Transfers in satisfaction of Prime's antecedent debt owed to Defendants." Compl. at ¶ 81. These threadbare allegations are clearly insufficient to survive a motion to dismiss.

17727546/1

**B.      The Complaint does not – and cannot – plausibly allege that Prime Trust paid Sun on account of an antecedent debt.**

In addition to dismissing complaints for failing to sufficiently allege the nature of the antecedent debt, courts dismiss complaints for failure to establish that allegedly preferential transfers were made on account of an antecedent debt. *See, e.g.*, *Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 36 (Bankr. D. Del. 2011) (granting motion to dismiss because the Trustee fails to show the elements of a preferential transfer because "no antecedent debt existed, and the Trustee fails to show the elements of a preferential transfer"); *Miller v. SWZ Fin., II LLC (In re United Tax Grp., LLC)*, Adv. No. 15-50880, 2021 Bankr. LEXIS 3682, at \*45 (Bankr. D. Del. Nov. 8, 2021) (dismissing complaint because the plaintiff "has not proven an element of his case – an antecedent debt").

Here, the Complaint does not plausibly allege that Prime Trust – as opposed to another source – paid the alleged antecedent debt owed to Sun.  Prime Trust simply did not have enough of its own funds to pay all of the disbursements (including the Transfers) during the Preference Period.  Prime Trust made over $870 million in disbursements during the Preference Period.  *See* Case No. 23-11162, D.I. 8 at pp. 1604-1843/2651.  Yet, Prime Trust only had $134 million in cash and revenue.  Thus, Prime Trust obtained funds from other sources to cover the $736 million shortfall.  The Complaint does not allege that Prime Trust's funds – as opposed to the other source's funds – were used to satisfy the alleged debt owed to Sun.  If the Transfers were funded by the other (non-Prime Trust) sources, then there was no transfer on account of an antecedent debt because there was no antecedent debt owed to Sun by any other party that would have funded the Transfers.  The Trust bears the burden of proof to demonstrate the antecedent debt element of its preference claim and the Trust does not satisfy its burden.  *See* 11 U.S.C. § 547(g).

16

While the Complaint alleges that the Transfers were transferred from the x3077 Account, this fails to "nudg[e] [the Trust's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  The First Day Declaration admits that while ***"[a]ll corporate bank accounts are legally held by Prime Trust, . . .the Company [defined as all of the Debtors] uses these accounts to pay the expenses of each of the Debtor entities***."   D.I.. 14 (First Day Declaration) at ¶ 14 (emphasis added).  They also admitted that "***Prime Core and Prime Trust maintain a centralized cash repository and cash management system***." *Id.* (emphasis added).  Thus, the Debtors – collectively – deposited and utilized funds in the x3077 Account.   However, because of the complete and hopeless commingling of funds, there is no way to trace what funds that were used to fund the Transfers belong to Prime Trust (who owed the alleged antecedent debt) and what funds belonged to the other Debtor entities.

Accordingly, Prime Trust cannot establish its *prima facie* preference because it cannot satisfy the antecedent debt element and the preference claim should be dismissed with prejudice.

[*Remainder of Page Intentionally Left Blank*]

## CONCLUSION

WHEREFORE, the Complaint should be dismissed with prejudice as to Sun.

Dated:  January 21, 2026
       Wilmington, Delaware

Respectfully submitted,

MORRIS JAMES LLP

/s/ *Eric J. Monzo*
Eric J. Monzo (DE Bar No. 5214)
Christopher M. Donnelly (DE Bar No. 7149)
3205 Avenue North Boulevard, Suite 100
Wilmington, Delaware 19803
Tel.: (302) 888-6800
Fax: (302) 571-1750
E-mail: emonzo@morrisjames.com
       cdonnelly@morrisjames.com

and

LOEB & LOEB LLP
Bethany D. Simmons (*pro hac vice* forthcoming)
Noah Weingarten (*pro hac vice* forthcoming)
345 Park Avenue
New York, New York 10154
Tel.: (212) 407-4000
E-mail: bsimmons@loeb.com
       nweingarten@loeb.com

*Counsel to Defendant Yuchen "Justin" Sun*

18

17727546/1