**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>PRIME CORE TECHNOLOGIES INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11161 (JKS)<br><br>(Jointly Administered) |
| PCT LITIGATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>YUCHEN "JUSTIN" SUN and POLO DIGITAL ASSETS LTD,<br><br>Defendants. | Adv. Pro. No. 25-51975 (JKS)<br><br>**Related Adv. D.I. Nos. 1, 15, 16, 17, 39, 40, 46, 47, 48, 55, 56, 57, and 58**[2] |

## OPINION

Before the Court is (i) Defendant Yuchen "Justin" Sun's ("Sun") motion to dismiss[3] ("Motion to Dismiss") the Complaint filed by Plaintiff PCT Litigation Trust ("PCT") for, among other things, lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and (ii) a dispute regarding the scope of discovery related to personal jurisdiction.[4]

PCT served discovery and a notice of deposition related to personal jurisdiction on Sun who objects to the breadth of the discovery. In reviewing the discovery dispute, the Court

---

[1] The debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528).

[2] Citations to D.I. __ reference the docket entries in the lead bankruptcy case and citations to Adv. D.I. __ reference the docket entries in this adversary proceeding.

[3] Adv. D.I. 15, 16, 17, 39, 40, and 46.

[4] Adv. D.I. 55, 56, 57, and 58.

considered the Motion to Dismiss and related pleadings, regarding personal jurisdiction.[5] For the reasons set forth below, the Motion to Dismiss under Rule 12(b)(2) is denied.

## JURISDICTION

The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

Pursuant to Bankruptcy Rule 7012(b) and Local Rules 7012-1 and 9013-1(f), Sun does not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

### A. Procedural Background

On August 12, 2025, PCT initiated this adversary proceeding by filing a Complaint against Defendants seeking to avoid and recover all preferential transfers of property made by the Debtors to or for the benefit of the Defendants plus interest, attorneys' fees, and costs, pursuant to sections 547 and 550 of the Bankruptcy Code.[6]

---

[5] PCT and Sun filed Requests for Oral Argument (Adv. D.I. 47 and 48), and Defendants filed a Notice of Completion of Briefing. Adv. D.I. 49. The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs, and the decisional process would not be significantly aided by oral argument.

[6] Adv. D.I. 1 (Compl.).

On January 21, 2026, Sun filed the Motion to Dismiss.[7] Shortly thereafter, Sun filed a Motion to Stay Discovery pending the Motion to Dismiss.[8] PCT opposed both the Motion to Dismiss[9] and the Motion to Stay Discovery.[10]

On March 30, 2026, the Court issued its Letter Opinion and Discovery Order staying discovery pending disposition of the Motion to Dismiss but permitted limited personal jurisdiction discovery.[11] The parties disagree about the scope of the personal jurisdiction discovery.[12]

**B. Factual Background**[13]

Prime was once one of the most prominent crypto companies in the United States.[14] Prime provided a variety of services to its clients, the primary of which was custodial services for fiat and crypto.[15] Many of Prime's customers used Prime to obtain access to the U.S. banking system because Prime's status as a state-chartered trust company in Nevada exempted Prime from having to acquire money-transmission licenses in many states.[16] Known as "money transmission as a service," Prime's trust charter enabled its customers to engage in activities

---

[7] Adv. D.I. 15 (the "Motion to Dismiss"), 16 (Declaration of Yuchen "Justin" Sun in Support of His Motion to Dismiss the Complaint (the "Sun Decl.")), and 17 (Opening Brief).

[8] Adv. D.I. 29 ("Motion to Stay Discovery") and 30 (Opening Brief in Support of the Motion to Stay Discovery).

[9] Adv. D.I. 39 (Opposition to Motion to Dismiss); Adv. D.I. 46 (Sun's Reply).

[10] Adv. D.I. 35 (Opposition to Motion to Stay Discovery); Adv. D.I. 36 (Sun's Reply).

[11] Adv. D.I. 43 ("Letter Opinion") and 44 ("Discovery Order").

[12] Adv. D.I. 55, 56, 57, and 58.

[13] The facts set forth in this section are taken from the Complaint.

[14] Adv. D.I. 1 (Compl.) at ¶¶ 46–52.

[15] Adv. D.I. 1 (Compl.) at ¶¶ 51–52.

[16] Adv. D.I. 1 (Compl.) at ¶¶ 51–52.

through Prime which would otherwise constitute money transmission in many states without having to undertake the time and effort to obtain their own money transmission licenses.[17]

Defendant Sun is a prominent figure and entrepreneur in the crypto industry.[18] Sun is the founder of TRON, one of the most popular blockchain ecosystems in the world.[19] Sun owns and/or controls many companies that operate in the crypto industry.[20] Defendant Polo Digital Assets Ltd. ("Polo") is one such company owned and/or controlled by Sun.[21] Polo operates the crypto exchange Poloniex.[22]

In October 2019, Prime and Sun executed the Sun Custodial Agreement[23] and Prime and Polo executed the Polo Custodial Agreement.[24] The Sun and Polo Custodial Agreements establish self-directed accounts for deposit of fiat and/or cryptocurrency.[25] Through these accounts, Account Holders, such as Sun and Polo, could access the Prime system to transact deposits and/or withdraws of fiat and cryptocurrency, subject to fees.[26] The Sun and Polo Custodial Agreements governed Prime and Defendants' relationship.[27] Polo also had an Escrow

---

[17] Adv. D.I. 1 (Compl.) at ¶¶ 50–52.

[18] Adv. D.I. 1 (Compl.) at ¶ 53.

[19] Adv. D.I. 1 (Compl.) at ¶ 53.

[20] Adv. D.I. 1 (Compl.) at ¶ 54.

[21] Adv. D.I. 1 (Compl.) at ¶ 55.

[22] Adv. D.I. 1 (Compl.) at ¶ 55.

[23] Adv. D.I. 1 (Compl.) at ¶ 56 and Ex. A (Self-Directed Custodial Account Agreement signed by Yuchen Sun (the "Sun Custodial Agreement")).

[24] Adv. D.I. 1 (Compl.) at ¶ 57 and Ex. B (Self-Directed Custodial Account Agreement between Prime and Polo (the "Polo Custodial Agreement")).

[25] Adv. D.I. 1 (Compl.), Ex. A (Sun Custodial Agreement) at § 2–4 and Ex. B (Polo Custodial Agreement) at § 2–4.

[26] Adv. D.I. 1 (Compl.), Ex. A (Sun Custodial Agreement) at § 2–4 and Ex. B (Polo Custodial Agreement) at § 2–4.

[27] Adv. D.I. 1 (Compl.) at ¶ 58, Ex. A (Sun Custodial Agreement) and Ex. B (Polo Custodial Agreement).

Agreement with Prime (the "Escrow Agreement"), pursuant to which Prime received funds that were escrowed in Polo's acquisition of Poloniex.[28] Each of the Sun Custodial Agreement, Polo Custodial Agreement, and Escrow Agreement (collectively, the "Agreements") were governed by Nevada law and required any dispute to be resolved through arbitration in Nevada.[29]

Prime terminated the Agreements in May 2023,[30] pursuant to provisions that allowed immediate termination if "Prime Trust becomes aware of or suspects that the Account Holder or any of its Agents are engaged in any criminal activity."[31] The Sun Custodial Agreement and the Polo Custodial Agreement both obligated Prime to "deliver the Custodial Property to [Sun or Polo] as soon as practicable or, at [Sun's or Polo's] request to a successor custodian" upon termination.[32] The Escrow Agreement obligated Prime to return the escrowed funds "in accordance with joint written instructions that are prepared and executed by both [Polo] and [Pluto Holdings, Inc.]."[33]

A portion of the funds to be disbursed upon termination of the Agreements required a disbursement authorization form.[34] Once received, Prime disbursed $1,186,475.37 to an

---

[28] Adv. D.I. 1 (Compl.) at ¶ 12 and Ex. C (Transaction Escrow Services Agreement with Polo Digital Assets, Ltd.).

[29] Adv. D.I. 1 (Compl.), Ex. A (Sun Custodial Agreement) at § 18, Ex. B (Polo Custodial Agreement) at § 18, and Ex. C (Escrow Agreement) at § 8.

[30] Adv. D.I. 1 (Compl.) at ¶¶ 73-75.

[31] Adv. D.I. 1 (Compl.), Ex. A (Sun Custodial Agreement) at § 6(e)(iv) and Ex. B (Polo Custodial Agreement) at § 6(e)(iv).

[32] Adv. D.I. 1 (Compl.), Ex. A (Sun Custodial Agreement) at § 6(d) and Ex. B (Polo Custodial Agreement) at § 6(d).

[33] Adv. D.I. 1 (Compl.), Ex. C (Escrow Agreement) at § 4.

[34] Adv. D.I. 1 (Compl.), Ex. C (Escrow Agreement) at § 4.

Augustech, LLC[35] bank account; the remainder of the transfers after termination of the Agreements totaling $7,897,428.40 did not require a disbursement authorization form. In total, Prime disbursed $9,083,903.77 (the "Transfers") to the Defendants in the 90-days prior to the Debtors' petition date.[36]

## ANALYSIS

### A. Personal Jurisdiction

Sun, a Hong Kong resident, argues that the Court lacks personal jurisdiction over him. Sun asserts that to be consistent with the Constitution, a plaintiff must show that the defendant has "minimum contacts" with the forum, the plaintiff's claims must arise out of those contacts, and the exercise of jurisdiction must comport with the traditional notions of fair play and substantial justice. He claims that he has no purposeful contacts with the United States and that the Complaint's jurisdictional theory rests entirely on the unilateral actions of other parties, not on conduct he directed towards the United States.

PCT argues, based on *Fuld v. Palestine Liberation Org.*, that "the Due Process Clause of the Fifth Amendment necessarily permits a more flexible jurisdictional inquiry" than the Fourteenth Amendment's minimum contacts test, and that the Court's exercise of jurisdiction over Sun meets the relaxed Fifth Amendment due process standard. PCT further argues, regardless of the application of *Fuld*, that Sun has extensive contacts with the United States to satisfy the traditional minimum contacts standard.

---

[35] Augustech, LLC is another Sun-affiliated company that provides support services to Poloniex. Adv. D.I. 40 (PCT Brief in Opposition to Motion to Dismiss), Ex. A (Declaration of James A. Pardo in Support of Plaintiff's Memorandum of Law in Opposition to Yuchen "Justin" Sun's Motion to Dismiss the Complaint (the "Pardo Decl.")), at Ex. 3 (email thread from May 18, 2023 to June 21, 2023).

[36] Adv. D.I. 1 (Compl.) at ¶¶ 1, 2, 77, 95, and 96.

Federal Rule 12(b)(2), made applicable by Bankruptcy Rule 7012(b), provides for dismissal of a complaint for "lack of personal jurisdiction."[37] "As the Supreme Court has cautioned, 'great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.'"[38]

Historically, bankruptcy courts have applied the minimum contacts test in assessing personal jurisdiction.[39] To establish minimum contacts:

> [first,] the plaintiff must show that the defendant has "minimum contacts" with the forum such that it purposefully availed itself of the privilege of conducting activities within the forum and invoked the benefits and protections of the forum's laws. Second, the plaintiff's claims must "arise out of or relate to" at least some of those contacts, evidencing a strong relationship among the defendant, the forum, and the litigation. Finally, the exercise of jurisdiction over the defendant must comport with traditional notions of fair play and substantial justice such that the defendant should reasonably anticipate being haled into court' in that forum.[40]

Personal jurisdiction under federal law is governed by the Fifth Amendment, not the Fourteenth Amendment.[41] Courts have traditionally applied the Fourteenth Amendment due process test for personal jurisdiction to cases governed by the Fifth Amendment. This requires the same minimum contacts with the United States as a whole that the Fourteenth Amendment requires with a specific state.[42]

---

[37] Fed. R. Civ. P. 12(b)(2).

[38] *Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362, 391 (D. Del. 2005) (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 115 (1987)).

[39] *Kesar, Inc. v. Uni-Marts, LLC* (*In re Uni-Marts, LLC*), 405 B.R. 113, 121 (Bankr. D. Del. 2009).

[40] *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (cleaned up; citations omitted). *See also King v. Bon Charge*, 823 F. Supp. 3d 508, 516 (D. Del. 2025); *FTX Recovery Trust v. Binance Holdings Ltd.* (*In re FTX Trading Ltd.*), No. 22-11068 (KBO), 2026 WL 2149961, at *5 (Bankr. D. Del. July 24, 2026).

[41] *King*, 823 F. Supp. 3d at 516–517.

[42] *Id.* at 517.

Recently, however, the Supreme Court held in *Fuld* that "the Fifth Amendment does not incorporate the Fourteenth Amendment minimum contacts standard."[43] In *Fuld*, the Supreme Court expanded the Fifth Amendment analysis, broadening what could lead to personal jurisdiction under federal law.[44] While the Supreme Court in *Fuld* did not provide an exact test for assessing personal jurisdiction under the Fifth Amendment, in *King v. Bon Charge*, Judge Bibas explained that *Fuld* established the following three principles:

> First, whatever standard applies in the Fifth Amendment context is "more flexible" than the standard applicable to the Fourteenth. Second, even though the Fifth Amendment does not import the minimum-contacts standard wholesale, the breadth of asserted jurisdiction and the extent of a defendant's contacts with the United States may still be relevant to the constitutionality of asserting jurisdiction in a particular case. Third, the Fifth Amendment may yet require courts to consider—as they do in Fourteenth Amendment cases—"the reasonableness of the assertion of jurisdiction in the particular case."[45]

Post-*Fuld*, courts have not delineated the bounds of personal jurisdiction under the Fifth Amendment,[46] but "if personal jurisdiction would be constitutional under the pre-*Fuld*

---

[43] *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 23 (2025).

[44] *Id.* at 16.

[45] *King*, 823 F. Supp. 3d at 517 (internal citations omitted) (citing *Fuld*, 606 U.S. at 16, 21–23). Judge Bibas of the Third Circuit Court of Appeal, sitting by designation, authored the decision in *King*.

[46] *Anderson v. Biegler GmbH, & Solace Advancement, LLC*, No. 24-CV-01603-NYW-SBP, 2026 WL 2672574, at *5 (D. Colo. Sept. 11, 2026) ("Without clear guidance about Fifth Amendment due process requirements post-Fuld, lower courts are "left [with] important issues...to decide." (*quoting King*, 823 F. Supp. 3d at 518); *see also Saul v. Valnet Inc.*, No. 1:25-CV-12236-JEK, 2026 WL 1878312, at *3 (D. Mass. June 30, 2026) ("The Court need not decide that issue, because if Saul satisfies the First Circuit's nationwide minimum-contacts standard, then he necessarily meets the less stringent test from *Fuld*."); *POM Grp. Inc. v. Schedule A Defs.*, No. 2:25-cv-01909, 2026 WL 1027266, at *4 (W.D. Pa. Apr. 16, 2026) ("In the absence of a concrete test from the Supreme Court, it is left to the lower courts to decide how to apply the Fifth Amendment due process test in a specific case."); *Sociedad Concesionaria Metropolitana Du Salud S.A. v. Webuild S.P.A.*, No. 3:24-cv-02043-SVN, 2026 WL 84524, at *8 (D. Conn. Jan. 12, 2026) (recognizing "significant uncertainty about what test applies under the Fifth Amendment"); *Fairfield Sentry Ltd v. ABN Amro Schweiz (In re Fairfield Sentry Ltd.)*, 671 B.R. 375, 389 (Bankr. S.D.N.Y. 2025) ("[T]he Court will begin its analysis by examining, as it has done in prior opinions, the Defendant's minimum contacts, as any defendants that have sufficient minimum contacts with the forum would also satisfy the more flexible personal jurisdictional standards set forth in *Fuld*.").

nationwide minimum-contacts standard, then jurisdiction is *a fortiori* constitutional under *Fuld*."[47]

The Court begins, and ends, its analysis with whether Sun has minimum contacts with the United States. The Court need not address the applicability of *Fuld.*

**B. Burden of Proof**

"Once a jurisdictional defense has been properly raised, the plaintiff bears the burden of demonstrating contacts with the forum state sufficient to give the court in personam jurisdiction."[48] In meeting its burden, "plaintiff must respond with actual proofs, not mere allegations."[49]

**C. Motion to Dismiss for Lack of Personal Jurisdiction**

**i. Minimum Contacts with the United States**

Sun argues that the Complaint fails to allege the necessary minimum contacts to establish personal jurisdiction for at least two reasons. First, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."[50] Second, the acceptance of payment from a bank in the forum state does not itself

---

[47] *King*, 823 F. Supp. 3d at 517.

[48] *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984) (citation omitted).

[49] *Id.* at 66 n. 9; *Stranahan Gear Co. v. NL Indus.*, 800 F.2d 53, 58 (3d Cir. 1986) ("The bare allegation in the . . . complaint . . . is not sufficient to meet this evidentiary burden.").

[50] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 417 (1984) ("[the] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982) (citations and quotations marks omitted) (affirming dismissal for lack of personal jurisdiction and holding that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.").

constitute purposeful availment to that forum state if the beneficiary did not initiate the transaction.[51]

The Supreme Court has held that "where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."[52] "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State."[53]

In *In re Celsius Customer Preference Actions*, the bankruptcy court found minimum contacts where foreign defendants' decision to contract with a United States company "manifests an intent [to] purposefully direct their activities at the forum."[54] In that case, the defendants "contracted to open accounts in a U.S. based entity and signed a contract subject to the laws of the State of New York,"[55] and the transfers were made by a United States entity to the defendants' accounts.

---

[51] *See, e.g., Helicopteros Nacionales De Colombia*, 466 U.S. at 416–17 ("[Foreign defendant]'s acceptance . . . of checks drawn on a Texas bank is of negligible significance for purposes of determining whether [defendant] had sufficient contacts in Texas."); *Budget Blinds, Inc. v. White*, 536 F.3d 244, 262 (3d Cir. 2008) (rejecting plaintiff's argument that "the Defendants established minimum contacts by accepting [the plaintiff]'s settlement payment which was wired from a California bank to defendants.") (citation omitted); *Keston v. FirstCollect, Inc.*, 523 F. Supp. 2d 1348, 1355 n. 6 (S.D. Fla. 2007) ("Unilateral transfer of funds to a different jurisdiction cannot create personal jurisdiction where it is otherwise lacking.").

[52] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (cleaned up).

[53] *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (finding minimum contacts when the contract was delivered in California, premiums were mailed from California, and the insured was a resident of California).

[54] *In re Celsius Customer Preference Actions*, 672 B.R. 822, 842 (Bankr. S.D.N.Y. 2025).

[55] *Id.* at 842.

The *Celsius* court reasoned that "the contacts must be the defendant's own choice and show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there. A party resisting a forum selection clause must make a strong showing in order to overcome the presumption of enforceability."[56] Thus, the *Celsius* court concluded that defendants who deliberately entered into contracts with a United States crypto-company and opened accounts in that United States based entity had established minimum contacts with the United States.

Here, Sun availed himself of the United States by contracting with Prime Trust, LLC, a Nevada-based entity.[57] The undisputed facts establish that Sun executed the Sun Custodial Agreement.[58] The Sun Custodial Agreement established self-directed accounts for deposit of fiat and/or cryptocurrency.[59] Sun agreed that the Custodial Agreement would be governed by Nevada law.[60] Sun also agreed that any dispute would be resolved through binding arbitration in Nevada, pursuant to the American Arbitration Association.[61] By the Sun Custodial Agreement, Sun "consent[ed] to this method of dispute resolution, as well as jurisdiction, and consent[ed] to this being a convenient forum for any such claim or dispute and waive[d] any right . . . to object to either the method or jurisdiction for such claim or dispute."[62] "A choice-of-law provision is a

---

[56] *Id.* (cleaned up; citations omitted).

[57] Adv. D.I. 1 (Compl.), Ex. A at Preamble ("Prime Trust LLC, a Nevada chartered trust company")).

[58] Adv. D.I. 16 (Sun Decl.) at ¶ 7 ("I am a party to the *Self-Directed Custodial Account Agreement* effective as of October 1, 2019."). *See also* Adv. D.I. 1 (Compl.), Ex. A (Sun Custodial Agreement).

[59] Adv. D.I. 1 (Compl.), Ex. A (Sun Custodial Agreement) at § 2–4 and Ex. B (Polo Custodial Agreement) at § 2–4.

[60] Adv. D.I. 1 (Compl.), Ex. A (Sun Custodial Agreement) at § 18 (Nevada choice of law).

[61] Adv. D.I. 1 (Compl.), Ex. A (Sun Custodial Agreement) at § 18 (Arbitration provisions with venue in Clark County, Nevada).

[62] Adv. D.I. 1 (Compl.), Ex. A (Sun Custodial Agreement) at § 18.

factor that gives rise to a deliberate affiliation with the forum state that makes the possibility of litigation foreseeable in the forum."[63]

In addition, Sun utilized Prime and several United States bank accounts to effectuate transfers,[64] and Sun directed incoming and outgoing wire transfers from accounts at Prime.[65] The Transfers resulted from Defendants' funds being held at Prime and Prime was contractually obligated to return the funds pursuant to the terms of the Sun and Polo Custodial Agreements when Prime terminated the Agreements.[66] Further, Sun personally acknowledged the termination and instructed Prime to transfer over $1 million to a bank account in the United States.[67] Moreover, Sun met with Prime's CEO and Chief Trust Officer in the United States to discuss "the synergies between Tron and Prime Trust."[68] Contrary to Sun's assertion, the contact was not unilateral, nor limited to acceptance of payment. The contacts were of Sun's choice and show that he deliberately reached out beyond his home. Like *Celsius*, the facts establish sufficient minimum contacts and indicate that Sun "purposefully availed [himself] of the privilege of doing business in the [United States] and could foresee being haled into court there."[69]

---

[63] *In re Celsius Customer Preference Actions*, 672 B.R. at 842 *(citing Burger King*, 471 U.S. at 482).

[64] Adv. D.I. 40 (Opposition to Motion to Dismiss), Ex. A. (Pardo Decl.) at Ex. 12, and Ex. B (Declaration of James P. Brennan ("Brennan Decl.")) at ¶¶ 16–27.

[65] Adv. D.I. 40 (Opposition to Motion to Dismiss), Ex. B (Brennan Decl.) at ¶¶ 19–23 and Exs. 2–5.

[66] Adv. D.I. 1 (Compl.), Ex. A (Sun Custodial Agreement) at § 6(d) and Ex. B (Polo Custodial Agreement) at § 6(d).

[67] *See* Adv. D.I. 39, Ex. A (Pardo Decl.) at Ex. 3.

[68] Adv. D.I. 39, Ex. A (Pardo Decl.) at Ex. 2.

[69] *In re Celsius Customer Preference Actions*, 672 B.R. at 842 (Bankr. S.D.N.Y. 2025). *In re FTX Trading Ltd.*, No. 22-11068 (KBO), 2026 WL 2149961 at *8 (findings personal jurisdiction over a defendant where the claim arose from conduct allegedly taken to "destroy FTX (including FTX U.S.) for the purpose of (and with the result of) acquiring customers located in the United States. Additionally, the deal was negotiated with United States counsel and arrangements were made with a United States public relations firm to announce it.").

### ii. Claims Arise Out of or Relate to Sun's Contacts, not Exclusively the Transfers

Sun asserts that the adversary proceeding does not arise out of any contacts that Sun had with the United States. Sun asserts that the claims arise out of the Transfers and not the Sun Custodial Agreement; and that PCT would have a (alleged) preference claim regardless of the existence of the Sun Custodial Agreement.

Plaintiff's claim must in some way "arise from the defendants' purposeful contacts with the forum."[70] As the Supreme Court explained:

> our most common formulation of the rule demands that the suit "arise out of or relate to the defendant's contacts with the forum." The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase "relate to" incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct.[71]

Here, the Transfers "arise out of or relate to" the Sun Custodial Agreement which provides that Prime may terminate the agreement if Prime "becomes aware of or suspects that the Account Holder [Sun] or any of its Agents are engaged in any criminal activity."[72] The agreement further provides that upon such termination, Prime shall deliver the "Custodial Property" to Account Holder.[73]

---

[70] *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018) (citation omitted).

[71] *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) (cleaned up, citations omitted).

[72] Adv. D.I. 1 (Compl.), Ex. A (Sun Custodial Agreement) at § 6(e)(iv).

[73] Adv. D.I. 1 (Compl.), Ex. A (Sun Custodial Agreement) at § 6(d).

PCT seeks return of the Transfers. The Transfers, and Sun's relationship with Prime, stem from the Sun Custodial Agreement.[74] Absent the agreement between the parties, there would be no basis for the Transfers. Again, among other things, the facts establish that Sun (i) contracted with Prime, a Nevada LLC;[75] (ii) the Agreements contained a choice of law provision and a forum selection clause mandating that all disputes be initiated in Nevada;[76] (iii) the Transfers arise out of or relate to the terms of the Sun and Polo Custodial Agreements; (iv) Sun personally acknowledged the termination and instructed Prime to transfer over $1 million to a bank account in the United States;[77] and (v) the Transfers were initiated from Prime's United States bank accounts.[78]

These facts demonstrate that the Transfers "arise out of or relate to" the Sun Custodial Agreement.

**iii. Fair Play and Substantial Justice**

Sun argues that it was not reasonably foreseeable that he would be haled into court based on his receipt of the Transfers.

Personal jurisdiction is proper only if a defendant could foresee being "haled into court" based on its conduct in the forum.[79]

---

[74] *Accord In re Celsius Customer Preference Actions*, 672 B.R. at 843.

[75] Adv. D.I. 1 (Compl.), Ex. A (Sun Custodial Agreement), Preamble.

[76] Adv. D.I. 1 (Compl.) at Ex. A (Sun Custodial Agreement) at § 18.

[77] *See* Adv. D.I. 39, Ex. A (Pardo Decl.) at Ex. 3.

[78] Adv. D.I. 1 (Compl.) at ¶ 77.

[79] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 260 n. 3 (3d Cir. 1998) (affirming dismissal for lack of personal jurisdiction because, inter alia, "[t]here is . . . an aspect of foreseeability that we believe is missing in this case.").

> Once there has been a sufficient showing of minimum contacts, it must then be determined whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable under the circumstances of the particular case. The "reasonableness" factors include: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.[80]

PCT having established minimum contacts, the burden shifts to Sun to make a "compelling case that the presence of some other considerations would render jurisdiction unreasonable."[81]

Sun argues he resides in Hong Kong and does not maintain a "domicile, residence, or place of business within the United States" nor does he "own, lease, or possess any real property in the United States."[82] He maintains that it would be a significant burden to litigate this case in the United States. PCT argues the Court has a substantial interest in this adversary proceeding.

"[B]eing a foreign citizen does not make litigation in the United States per se unreasonable."[83] Contrary to Sun's argument that litigation in the United States would be a burden, as discussed, Sun has significant business dealings in the United States.[84] This Court has presided over the chapter 11 cases and is overseeing numerous other avoidance actions

---

[80] *In re Celsius Customer Preference Actions*, 672 B.R. at 843 (citations omitted, cleaned up).

[81] *Burger King Corp.*, 471 U.S. at 477.

[82] Adv. D.I. 16 (Sun Decl.) at ¶¶ 2-6.

[83] *In re Celsius Customer Preference Actions*, 672 B.R. at 844 (citations omitted) (recognizing that it "possesse[d] a strong interest because the bulk of the Celsius litigation has occurred in this Court"); *Levin v. Javeri (In re Firestar Diamond, Inc.)*, 654 B.R. 836, 903 (Bankr. S.D.N.Y. 2023) ("The United States has a strong interest in adjudicating claims that arise under its Bankruptcy Code so that both creditors and debtors can obtain the remedies and relief that the United States Congress has determined are fair and equitable.").

[84] *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129–30 (2d Cir. 2002) (citations omitted; cleaned up) ("Even if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.").

associated with Prime. PCT has a strong interest in the efficient resolution of these cases for the benefit of Prime's creditors. Additionally, Sun has not provided other considerations to render the United States or Delaware an unreasonable jurisdiction, nor has he raised any "special social policies applicable to this case."[85] Consequently, Sun has failed to establish that litigation in the United States is unreasonable.

**CONCLUSION**

For the reasons discussed, the Court denies the Motion to Dismiss solely with respect to the 12(b)(2) argument. The Court has personal jurisdiction over Sun in this adversary proceeding. An order will issue.

In light of the foregoing, the Court will hold a status conference on October 1, 2026, at 1:00 p.m. Eastern Time (via Zoom) to discuss (i) whether the pending discovery disputes with respect to personal jurisdiction are moot; (ii) the implications of this ruling on the Letter Opinion and Discovery Order; and (iii) any other relevant case management issues.

Dated: September 30, 2026

J. Kate Stickles
United States Bankruptcy Judge

85 *In re Celsius Customer Preference Actions*, 672 B.R. at 844.